ELMA R. McLAUGHLIN, APPELLANT, v. EQUITABLE
LIFE ASSURANCE SOCIETY, APPELLEE.

FILED JANUARY 4, 1894.   No. 5424.

1. **Life Insurance Contracts.**  In the absence of fraud or mis- take all previous verbal understandings are merged in the writ- ten contract of insurance, which is conclusively presumed to

contain the entire engagements of the parties with all the conditions of their fulfillment.

2. **Agreement to Issue Paid-up Policy:** ANNUAL PREMIUMS. It was stipulated in a life insurance policy that in case of default of payment of the annual premium therein named, after the payment in full of three of such premiums, the insurance company would issue in favor of the beneficiary therein, a paid-up policy for as many parts of the amount insured as equaled the number of premiums paid, provided such policy should be surrendered duly receipted within six months from the date of such default. *Held,* That the surrender of the receipted policy within six months after default is a condition precedent to the right to demand paid-up insurance.

3. **Specific Performance of Contract to Issue Paid-up Policy.** The insured, having failed to surrender the policy until more than eleven months after default, is not entitled to paid-up insurance, and an action by the beneficiary to compel specific performance of the contract therefor by the insurance company was rightfully dismissed for want of equity, although the insured had paid three of the annual premiums previous to the default.

APPEAL from the district court of Douglas county. Heard below before SCOTT, J.

The opinion contains a statement of the case.

*Isaac Adams,* for appellant :

Appellant did not forfeit her right to paid-up insurance through failure to surrender to appellee her original policy within six months from date of default. Time was not made essential by the terms of the policy. (Waterman, Specific Performance, sec. 462; May, Insurance, secs. 342, 343 ; *Mutual Life Ins. Co. v. French,* 30 O. St., 240; *Tutt v. Covenant Mutual Life Ins. Co.,* 19 Mo. App., 677; *Northwestern Mutual Life Ins. Co. v. Little,* 56 Ind., 504; *Ohde v. Northwestern Life Ins. Co.,* 40 Ia., 357; *Symonds v. Northwestern Mutual Life Ins. Co.,* 23 Minn., 491; *Hull v. Northwestern Mutual Life Ins. Co.,* 39 Wis., 397 ; *Franklin Life Ins. Co. v. Wallace,* 93 Ind., 17 ; *Northwestern Mutual*

*Life Ins. Co. v. Fort's Admr.*, 82 Ky., 269 ; *St. Louis Mutual Life Ins. Co. v. Grigsby*, 19 Bush [Ky.]; 310; *Eddy v. Phœnix Mutual Life Ins. Co.*, 65 N. H., 27.)

Appellant's default was not long continued. It is explained. It did not occasion any damage to appellee. The default does not therefore constitute laches. (May, Insurance, sec. 469; *Barnes v. McMurtry*, 29 Neb., 178; *Symonds v. Northwestern Mutual Life Ins. Co.*, 23 Minn., 499.)

Upon the payment of the third annual premium the contract for paid-up insurance became mutual and should be enforced. (*Chase v. Phœnix Mutual Life Ins. Co.*, 67 Me., 85; *Montgomery v. Phœnix Mutual Life Ins. Co.*, 14 Bush [Ky.], 51 ; *Johnson v. Southern Mutual Life Ins. Co.*, 79 Ky., 403 ; *Southern Mutual Life Ins. Co. v. Montague*, 84 Ky., 653 ; *Smith v. National Life Ins. Co.*, 103 Pa. St., 177; *Hexter v. United States Life Ins. Co.*, 15 S. W. Rep. [Ky.], 863 ; *Attorney General v. Continental Life Ins. Co.*, 93 N. Y., 70; Waterman, Specific Performance, sec. 465; *Barnes v. McMurtry*, 29 Neb., 178; 2 Story, Equity, secs. 1314–1316.)

*Isaac E. Congdon, contra:*

The written contract supersedes prior statements made by the insurer. (*Ruse v. Mutual Benefit Life Ins. Co.*, 23 N. Y., 516; *Mutual Benefit Life Ins. Co. v. Ruse*, 8 Ga., 534; *Fowler v. Metropolitan Life Ins. Co.*, 116 N. Y., 389; *Smith v. National Life Ins. Co.*, 103 Pa. St., 177; *Knickerbocker Life Ins. Co. v. Heidel*, 8 Lea [Tenn.], 488; *Mutual Life Ins. Co. v. Bratt*, 55 Md., 200 ; *Continental Life Ins. Co. v. Hamilton*, 41 O. St., 274 ; *Union Mutual Life Ins. Co. v. Mowry*, 96 U. S., 544; *Thompson v. Knickerbocker Life Ins. Co.*, 104 U. S., 252; *Mobile Life Ins. Co. v. Pruett*, 74 Ala., 487.)

The time of the surrender of the policy is of the essence of the contract. (*Sheerer v. Manhattan Life Ins. Co.*, 20

Fed. Rep., 886; *Attorney General v. Continental Life Ins. Co.*, 93 N. Y., 74; *Hudson v. Knickerbocker Life Ins. Co.*, 28 N. J. Eq., 168; *Bussing's Executors v. Union Mutual Life Ins. Co.*, 34 O. St., 222; *Coffey v. Universal Life Ins. Co.*, 10 Ins. L. J. [Wis.], 525; *Smith v. National Life Ins. Co.*, 13 Ins. L. J. [Pa.], 330; *Hanthorne v. Brooklyn Life Ins. Co.*, 5 Mo. App., 73; *Michigan Mutual Life Ins. Co. v. Bowes*, 42 Mich., 19; *Wheeler v. Connecticut Mutual Life Ins. Co.*, 82 N. Y., 543; *Dorr v. Phœnix Mutual Life Ins. Co.*, 67 Me., 438; *Universal Life Ins. Co. v. Whitehead*, 58 Miss., 226; Cooke, Life Ins., sec. 84; *Union Central Life Ins. Co. v. McHugh*, 7 Neb., 68.)

*Joseph R. Clarkson*, also for appellee.

POST, J.

This was an action by the plaintiff in the district court of Douglas county to enforce the specific performance of an agreement by the defendant to issue a paid up policy of insurance. There was a finding for the defendant, and a decree dismissing the petition, from which the plaintiff has prosecuted an appeal to this court. There is no controversy with respect to the material facts, which are as follows:

In the year 1884 the defendant company issued a policy of insurance on the life of Andrew W. McLaughlin in favor of his wife, the plaintiff herein. Said policy was for $5,000 current insurance, upon the payment of an annual premium of $314.90 on the 26th day of August of each year, to be fully paid up after fifteen of such payments. It was stipulated in said policy that in case of default by the insured after the payment of not less than three of such annual premiums, the defendant company would issue a paid up policy in favor of the plaintiff for as many fifteenth parts of the sum of $5,000 as equaled the number of premiums so paid, provided said policy should be surrendered duly receipted within six months from the date of

such default.   The provisions of the policy with respect to paid up insurance are as follows:

"And further, that if premiums upon this policy, for not less than three complete years, of assurance shall have been duly received by said society, and this policy should thereafter become void in consequence of default in payment of a subsequent premium, said society will issue, in lieu of such policy, a new paid up policy, without participation in profits, in favor of said Elma R. McLaughlin, if living, and if not living to the children of said Andrew W. McLaughlin or their guardian for their use, or if there be no children surviving, then to the executors, administrators, or assigns of said Andrew W. McLaughlin, for ·as many fifteenth parts of the original amount hereby assured as there shall have been complete annual premiums received in cash by said society upon this policy at the date when such default shall first be made; provided, however, that this policy shall be surrendered duly receipted within six months of the date of default in payment of premium as mentioned above."

In case of default in payments of premiums by the assured the contract·contained the following provision:

"And if any premium or installment of a premium on this policy shall not be paid when due, this policy shall be void; and no credit for surplus accumulated on this policy shall be deemed applicable to the payment of any premium; nevertheless, nothing herein contained shall be construed to deprive the holder of this policy of the privilege to demand and receive paid up insurance in accordance with the agreement contained in this policy."

It is conceded that three of the annual payments were made by Mr. McLaughlin, to-wit, those for the years 1884, 1885, and 1886, but that he failed to make the payment due in August, 1887.   It is further admitted that said policy was not surrendered within six months thereafter, nor was a demand made for paid up insurance until the month

of July, 1888, when the insured addressed a communica-
tion to the defendant company, in which he inquired what
steps were necessary in order to preserve his rights under
the contract. In reply to that inquiry he received a com-
munication from the defendant informing him that his
policy had been forfeited for the non-payment of the pre-
mium, and had then no surrender value. It is shown by
the testimony of Mr. McLaughlin that he was, at the dates
of both the applications and the policy, cashier of the First
National Bank of Plattsmouth, and that Mr. Guyon, the
agent who wrote his application, had his headquarters in
the same bank. He testifies that he was informed by
Guyon, in whom he had great confidence, that after the
payment of three premiums his policy would be absolutely
non-forfeitable, and that he could not lose the money thus
paid. It also appears that he held a second policy for a
like amount issued by the defendant company; that, being
pressed for money to pay the premiums as they matured,
he requested an extension of payments on the last named
policy, which request was granted, but after making one or
two payments thereon, it was suffered to lapse. This wit-
ness, in answer to questions by counsel for the plaintiff and
the court, testified as follows:

Q. If I understand you, the payment that lapsed was
due in August, 1887?

A. Yes, sir.

Q. You wrote them in July, 1888.

A. Yes.

Q. And they answered saying that your policies had
lapsed?

A. Yes, sir.

Q. That they had no surrender value and were for-
feited?

A. Yes, sir; that is what they said.

Q. You may state, Mr. McLaughlin, if you have not
already, whether you knew of the clause, the proviso, in

the policy respecting the surrender of it within six months after failure to pay.    Why did you not know it?

A. Well, I suppose because I hadn't read it is the only particular reason.    I took the word of the agent.    I know I made a pretty strong effort to raise the third annual premium.

Q. Did you make any effort to raise this money within six months?

A. Yes, sir.

Q. Why didn't you present your policy within six months?

A. The reason why I didn't present it was because I kept thinking all the time I would raise the money and pay it and keep the policy alive; that was the reason. When I found I couldn't do it I wrote to the company.

Q. And the reason you didn't present and surrender the policy within the time provided by the policy was in the hopes that you could raise the money?

A. Yes, sir.

And on cross-examination he testified:

Q. When did you first read the policy?

A. When I wrote the company and got their reply that my policies were lapsed and no good, I then put it in the hands of my attorney.    As near as I can remember, I believe it was in August, 1888.

Q. After you had written to the company?

A. Yes.

Q. And the first that you knew of the six months clause was when you read the policy, which reading was brought about through the receipt of this letter that you have spoken of as having received from the company?

A. Yes, sir.

Q. Did you ever offer to surrender the policy to them?

A. I don't know that I made a formal offer to surrender it.    I only wrote them asking what was necessary for me to do.

McLaughlin v. Equitable Life Assurance Society.

Q. You couldn't have offered to surrender it at the time because you didn't know of this six months clause?

A. No, sir.

\*        \*        \*        \*        \*        \*        \*

Q. When you read this policy, as you say you did, a little before you wrote to the company, after you got an answer from the company, you then read the policy?

A. Yes, sir.

\*        \*        \*        \*        \*        \*        \*

Q. You have had a good deal to do as a business man with different kinds of transactions?

A. Yes, sir.

Q. Especially contracts that you signed?

A. Yes, sir.

Q. Being cashier of a company you were pretty careful about these matters?

A. Yes, sir.

The contract contemplates two conditions precedent to the right of the insured to demand a paid up policy in favor of the beneficiary, viz.: First, the payment of three of the annual premiums; and second, the surrender of the policy, duly receipted, within six months after the default of further payments. Those conditions are not unreasonable, nor do they conflict with any provision of statute or principle of public policy; and courts cannot, without the most flagrant usurpation of legislative powers, refuse to give effect to such engagements where not tainted with fraud, unless the conditions thereof are waived by the act of the party entitled to insist upon their performance. The surrender of the receipted policy within six months after default cannot, on principle, be said to be less essential than the payment of the three yearly premiums. Both are necessary in order to entitle the holder to the paid-up insurance. He might elect, as he apparently did, to take the chances of raising the money to keep this policy alive, trusting to the leniency shown him in the other case; but in doing

so he took the risk of forfeiting his policy in case he con-
tinued in default for more than six months.    It may be
conceded from his statements, and he testifies with evident
candor and firmness, that he was unaware of the provision
for the surrender of the policy within six months ; but that
fact does not alter the legal status of the case.    The over-
whelming weight of authority, if indeed there can be said
to exist a diversity of opinion on the subject, is that in the
absence of fraud or mistake all previous verbal agreements
are merged in the written contract of insurance, which is
conclusively presumed to contain the entire engagement of
the parties with all the conditions of its fulfillment then
contemplated. (*Union  Mutual  Life  Ins.  Co.  v.  Mowry*, 96
U. S., 544; *Thompson v. Knickerbocker  Life  Ins.  Co.*, 104
U. S., 252 ; *Ruse v. Mutual Benefit Life Ins. Co.*, 23 N. Y.,
516 ; *Fowler v. Metropolitan Life Ins. Co.*, 116 N. Y., 389 ;
*Mobile  Life  Ins.  Co.  v. Pruett*, 74  Ala., 487 ; *Mitchell v.
Universal  Life  Ins.  Co.*, 54  Ga., 289 ; *Smith v. National
Life Ins. Co.*, 103 Pa.'St., 177.)

It is not necessary, however, to invoke the rule above
stated in this case, for the reason that the representation of
the agent upon which reliance is placed does not relate to
the existence of any fact or include even a definite promise
for the future.    It is at most the statement of an opinion,
a mere conclusion that the policy was non-forfeitable, and
that the insured could not lose the money invested, in case
he made three annual payments.    We would feel con-
strained to hold from the evidence in the record, if that
question was essential to the present inquiry, that in the
making of the contract in question there was no disparity
between the parties.    The occupation and experience of
the insured certainly rendered him as capable of interpret-
ing and understanding the condition of the policy as Guyon,
the agent of the company.    It cannot be said that the con-
dition under consideration was not discoverable by the ex-
ercise of reasonable care, since it appears in bold type upon

the face of the policy, and is apparent from the most casual examination thereof. The dictates of common prudence would suggest the reading of an agreement involving so much as did this policy to the insured and his family, while it is difficult to conceive how an experienced business man could invest nearly $1,000 upon a written contract committed to his own custody, relying exclusively upon the statements of the adverse party as to its terms and provisions in a material respect. It is evident that the insured was unacquainted with the conditions of the policy, and that his ignorance was due to his own negligence and in no sense attributable to the fraud or misrepresentation of the defendant company.

We come now to an examination of authorities which have a direct application to the condition relied upon by the defendant. Of the reported cases which have a bearing upon the subject, a decided majority sustain the proposition that where provision is made in the policy for paid up insurance for part of the amount named, upon the surrender thereof within a given time after default, such right must be exercised within the time named. (See *Hudson v. Knickerbocker Life Ins. Co.*, 28 N. J. Eq., 167 ; *Attorney General v. Continental Life Ins. Co.*, 93 N. Y., 74 ; *Bussing's Executors v. Union Mutual Life Ins. Co.*, 34 O. St., 222 ; *Coffey v. Universal Life Ins. Co.*, 10 Ins. L. J. [Wis.], 525 ; *Smith v. National Life Ins. Co.*, 13 Ins. L. J. [Pa.], 330 ; *Sheerer v. Manhattan Life Ins. Co.*, 20 Fed. Rep. 886 ; *Universal Life Ins Co. v. Devore*, 14 S. E. Rep. [Va.], 532 ; *Hexter v. United States Life Ins. Co.*, 15 S. W. Rep. [Ky.], 863 ; *Northwestern Mutual Life Ins. Co. v. Barbour*, 17 S. W. Rep. [Ky.], 796 ; Cooke, Life Ins., sec. 84 and note on page 152.) We have been referred as authority for the opposing view to *Chase v. Phœnix Mutual Life Ins. Co.*, 67 Me., 85, *Montgomery v. Phœnix Mutual Life Ins. Co.*, 14 Bush [Ky.], 51, and *Southern Mutual Life Ins. Co. v. Montague*, 84 Ky., 653. Of the above cases, *Chase. v.*

*Phœnix Mutual Life Ins. Co.* is the only.one, as we shall presently see, which can be relied upon to sustain the contention of the plaintiff, and it is severely criticised by the author of Cooke on Life Insurance. (See note above cited.) Of the Kentucky cases it may be said that in *Sheerer v. Manhattan Life Ins. Co., supra,* which was a case in the United States circuit court for that district, *Montgomery v. Ins. Co.* is declared to be against the overwhelming weight of authority, and Mr. Justice Mathews, in a concurring opinion, declares the language of the policy too plain for interpretation, and holds that time must be deemed to be the essence of the contract, but in *Hexter v. United States Life Ins. Co.,* and *Northwestern Mutual Life Ins. Co. v. Barbour, supra,* the conditions, which were substantially like the one here involved, were held to be essential, and that it was necessary to surrender the policies within the time named in order to render the insurer liable. We are referred in the very able brief submitted by counsel for the plaintiff to the case of *Barnes v. McMurtry,* 29 Neb., 178. It is not claimed for that case that the proposition decided, viz., the validity of a provision limiting the right of action on the policy to six months from the date of the loss has any direct bearing upon the present controversy; but it is argued from the language there used that the plaintiff herein has by his contract acquired an undefined but substantial equity, which may be enforced by decree in this action. The terms "substantial right" and "substantial justice," as used in this connection, are indefinite and illusive, and not susceptible of a precise legal definition. It would seem, however, that one to whom has been awarded the full measure of relief for which he has himself stipulated, is the recipient of substantial justice within the most liberal interpretation of the term, and should not be heard to ask more at the hands of an earthly tribunal. The equities of the case being with the defendant, the decree of the district court is

AFFIRMED.