### LEVAN v. METROPOLITAN LIFE INS. CO.

#### (136 S. E., 304)

1. INSURANCE—WAIVER OF CLAIMED FORFEITURE NEED NOT BE PLEADED.
   —It is unnecessary, in action on insurance policy, to plead waiver of claimed forfeiture.

2. INSURANCE—PROVISION FOR WAIVER OF PREMIUMS DURING TOTAL DISABILITY SHOULD BE CONSTRUED TO EFFECTUATE EVIDENT INTENTION OF PRESERVING INSURANCE IN CASE OF INABILITY TO PAY PREMIUMS.—
   Clause in life policy, providing for waiver of premiums during total disability, should be construed so as to effectuate its evident intention of preserving insurance in event insured, on account of disability, became unable to pay premium.

3. INSURANCE—INSURED HELD PRESUMED ENTITLED TO BENEFIT OF CLAUSE WAIVING PREMIUM DURING DISABILITY.—Where insured, by reason of disability, was rendered incapable of furnishing proof thereof, it must be presumed that insured is entitled to benefit of total disability clause waiving premiums during period of disability.

4. INSURANCE—INSURED'S DISABILITY AND INABILITY TO FURNISH PROOF THEREOF AND REASONABLENESS OF NOTICE GIVEN BY BENEFICIARY HELD FOR JURY.—Whether insured was totally and permanently disabled, as defined in life policy providing for waiver of premiums during disability, and whether he was incapable of furnishing proof by reason of such disability, and whether beneficiary gave notice with reasonable promptness, *held* for jury.

5. INSURANCE—GENERALLY, INSANITY, OF ITSELF, DOES NOT EXCUSE PAYMENT OF PREMIUM.—Generally, insanity does not, of itself, excuse payment of premium on life insurance policy.

Before WILSON, J., Sumter, Summer Term. 1925. Affirmed.

Action by Malinda L. Levan against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant appeals.

*Messrs. Elliott & McLain,* for appellant, cite: *Insanity of insured does 'not avoid forfeiture for non-payment of premiums:* 122 Miss.; 813; 104 U. S., 252; 15 A. L. R., 314 and 318, note. *Failure to perform act absolutely agreed to be done not excused for inevitable accident not provided against:* 82 N. Y., 550; 37 A. S. R., 597. *Policy written by insurer to be strictly construed against it:* 99 S. E., 806. *Ambiguities in policy to be construed in favor of indemnity:* 77 S. E., 1013. *Contract to be performed after death of party not to be annulled after such death except for breach of letter of contract:* 101 S. E., 653. *Policy providing five days' notice of cancellation cannot be cancelled on less notice:* 101 S. E., 859. *Case distinguished:* 78 S. C., 73. *Right to demand proof of loss may be waived:* 124 S. E., 122.

*Messrs. Harby, Nash & Hodges,* for respondent, cite: *Defendant waived right to demand proof of loss:* 32 C. J., 1354. *Insanity or incapacity will excuse failure to make proof of loss within time required:* 80 S. C., 151; 78 S. C., 72; 6 Ga. App., 193; 64 S. E., 693; 108 Neb., 845; 189 N. W., 388; 29 A. L. R., 1507. *Case distinguished:* 15 A. L. R., 314.

January 6, 1927.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE.

This was an action upon a policy of insurance tried before his Honor, Judge Wilson, and a jury at the summer term of the Court of Common Pleas for Sumter County, 1925, resulting in a verdict for the plaintiff below in the

full amount of the policy. From the verdict the defendant appealed.

A life insurance policy on the life of Barton Levan was written number of years ago. The policy, in addition to the usual provisions, contained a special clause, commonly called a total disability clause, which provided that in consideration of an additional premium the insurance company agreed "that if while the above-numbered policy is in full force and effect and before default in the payment of any premium, the company receives due proof that the insured as result of injury or disease * * * has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the company will allow the following benefits. * * * The company, commencing with the anniversary of the policy next following receipt of such proof, will waive payment of each premium becoming due during such disability." By way of defense, it was alleged that the policy had been forfeited by reason of the non-payment of the semiannual premium, which became due on June 5, 1923.

The plaintiff, who was the widow of Levan and the beneficiary under the policy, admitted that the premium due on June 5, 1923, had not been paid, and contended that by the total disability clause in the policy above set out the company had excused the payment of this premium for the reason that at the time it became due Levan was totally and permanently disabled within the purview of the policy provisions. In reply to this contention, the company asserted that the provisions of the total disability clause had remained inoperative because Levan had failed to give notice and proof of his disability. The plaintiff asserted that the failure to give notice was excused because the disability itself rendered the insured incapable of giving the notice and proof required, and further, that the giving of notice had been waived.

The testimony tends to show the following facts: So far as the insured, or any one else, knew, he was in good health in January, 1923. However, in the spring of that year he began to betray symptoms of mental disease. By May he had become disagreeable. He was a barber by trade, running a barber shop, and on account of his condition ran customers away. He was crazy when the June, 1923, premium fell due, and through the grace period he was not able to conduct his business, and got worse and worse until he finally was sent to the State Hospital for the Insane late in 1923, where he died on January 12, 1924. I was discovered in the State Hospital that he was suffering with general paralysis of the spine, which was caused by syphilitic infection. The usual Wassermann test did not reveal the condition, which was ascertained by an examination of the spinal fluid. During the period prior to the due date of the premium until the time of his death Levan never realized he was crazy.

There are three exceptions which make only two questions: First, did the total disability of the insured due to insanity excuse failure to comply with the policy provision to giving notice of such disability? Second, did his Honor err in charging the law of waiver?

The exception alleges that the trial Judge erred in charging the law of waiver, because no such issue arose in the case, or was made by the pleadings. It is, of course, unnecessary to plead waiver of a claimed forfeiture. The issue of waiver was present in the case in regard to two matters. First, it was contended by the plaintiff that the letters passing between plaintiff's attorneys and the manager of the defendant company, and especially the letter to plaintiff's attorneys, constitute a waiver of the second defense set up in the answer, which was that Levan had procured a reinstatement of the policy by misrepresentations; the argument being that, since the company had refused to pay the policy on the single

ground that Levan was not totally and permanently disable, the jury would be justified in concluding that other possible defenses known to the company were not relied upon. Second, on the same theory, and for the same reason, it was contended by plaintiff that this letter constituted a waiver of the policy provision requiring proof of disability before the total disability clause became operative; the argument being that, since the company had refused to pay on the alleged ground that no disability in fact existed, an inference arose that they were waiving any supposed defense arising out of the failure of the insured to give notice or proof of the claimed disability. 32 Corpus Juris, 1354 (section 636), and cases cited. It is difficult to see how any prejudice could have resulted from this charge, even had waived not been in issue.

Since error is alleged in the Court's construction of 2, 3 the total disability clause, at the outset, it seem proper to remark that the evident purpose of such a provision in the policy was to preserve the insurance in the event the insured, on account of disability, became unable to make the money to pay the premiums; and the clause should be construed so as to effectuate this intention. Accordingly, where the insured was rendered incapable of furnishing proofs of his disability by reason of disability, then it must be presumed that the parties did not intend by the language used to deprive the insured of the benefit he was to receive.

The Circuit Judge adopted the plaintiff's view of the law, and held, in charging the plaintiff's first request, that if at the time the unpaid premium became due Levan was totally and permanently disabled as defined in the policy, and was incapable of furnishing proofs of his disability by reason of the disability itself, and that his beneficiary complied with the policy provisions with reasonable promptness under all the circumstances, then the policy would not be considered forfeited for nonpayment of premiums. The precise point was passed on by the Supreme Court of Nebraska in *Marti*

*v. Midwest Life Insurance Co.,* 108 Neb., 845; 189 N. W., 388; 29 A. L. R., 1507. In this case the company claimed the policy lapsed for nonpayment of premium on February 10, 1917. It was alleged and proved that the insured became totally disabled and incurably insane on or about March 1, 1916. His wife, who was the beneficiary, was not aware of the existence of the policy. She gave notice and proofs of death to the company, which refused to pay on the ground that the policy had lapsed. The policy contained the usual provisions for forfeiture upon the non-payment of premiums, and contained a total disability clause. The Court states the plaintiff's position to be that she based her right to recover upon the proposition that, since the insured became totally and permanently disabled on March 1, 1916, and remained so until his death, he was incapable of giving the proofs or exercising any of the policy options set out in the policy, and that therefore she had the right after his death to furnish the proofs and exercise the option. This view was adopted by the Supreme Court. It held that, since the beneficiary had acted within reasonable time, under all the circumstances, she was entitled to recover. There are many citations bearing out this view. The Court concluded by saying:

"Furthermore, it would be a harsh rule that would say that in a case where a man was injured, so as to be totally *non compos mentis,* within a few hours before the next payment on his policy became due, and while it was still in force, the occurrence of the very contingency he was insuring against should deprive him or his beneficiaries of the benefit of the contract."

In *North American Accident Insurance Co. v. Watson,* 6 Ga. App., 193; 64 S. E., 693, Watson sued the insurance company for a sick benefit. The defense was that the plaintiff had failed to comply with a policy provision that written notice of sickness should be given the company within ten days of the commencement thereof, and failure to give such

notice would invalidate any and all claims under the policy. The plaintiff showed, in reply, that he was prevented from giving the notice within the time by reason of mental and physical incapacity caused by his sickness, and that upon his recovery he gave notice within a reasonable time. The Court pointed out that the majority rule was to hold stipulation as to the time in which notice or proof of injury or sickness should be given as not necessarily to be literally complied with. The provisions operate upon the contract only subsequent to the fact of injury or sickness. The following quotation is very pertinent:

"It is settled by an overwhelming weight of authority that where the failure to give prompt notice is not due to the negligence of the insured or the beneficiary, but such compliance has been prevented and rendered impossible by an act of God, this would furnish a sufficient legal excuse for the delay in giving the stipulated notice; and this doctrine has been applied in cases in which a specified time for the giving of the notice has been fixed by the contract. The theory of these cases, as stated by Cooley (4 Briefs on the Law of Insurance, 3462), is that, 'It could not have been in the contemplation of the parties that if the insured, who was required to give notice, was unable to do so by reason of the very accident against which indemnity was given, he should therefore loose such indemnity through no fault of his own.' " *Reed v. Loyal Protective Association*, 154 Mich., 161; 117 N. W., 600; 37 Insurance Law Journal, 1024. *Brown v. Fraternal Accident Association*, 18 Utah, 265; 55 P., 63. *Comstock v. Fraternal Accident Association*, 116 Wis., 382; 93 N. W., 22. *Hayes v. Continental Casualty Co.*, 98 Mo. App., 410; 72 S. W., 135. *Insurance Co. v Boykin*, 12 Wall., 433; 20 L. Ed., 442. *Woodmen Accident Association v. Pratt*, 62 Neb., 674; 87 N. W., 546; 55 L. R. A., 291; 89 Am. St. Rep., 777.

In *Germania Fire Insurance Co. v. Boykin*, 12 Wall, (79 U. S.), 433; 20 L. Ed., 442, judgment of the District Court

of the United States for the District of South Carolina was
under review. The suit was upon certain fire insurance
policies, and it appeared that Boykin, at the time he had
gone through the act of signing certain affidavits constituting
the proof of loss required by the policy, was, in fact, insane.
The company contended that the contract assumed that the
company should receive proof of loss by Boykin signed
when he was insane was insufficient. The United States
Supreme Court in overruling this contention says:

"If he was so insane as to be incapable of making an in-
telligent statement, this would of itself excuse that con-
dition of the policy."

In *Edgefield Mfg. Co. v. Maryland Casualty Co.,* 78 S.
C., p. 72; 58 S. E., 696, the manufacturing company had a
policy of insurance against its liability as an employer. It ap-
peared that one Jennings had sued the manufacturing com-
pany and had recovered judgment which the manufactur-
ing company had been forced to pay, and it brought suit
against the casualty company to recover the amount paid to
the extent of the face of the policy. Among other defenses
the defendant set up that it was relieved from liability by
plaintiff's failure to comply with a provision in the policy to
the effect that the assured, upon the occurrence of accident,
shall give immediate written notice thereof, and should like-
wise give notice of any claim made on account thereof, and
that if a suit is brought the insured should immediately
forward the process to the home office of the company as
soon as the same shall have been served on him. The Court,
speaking through Mr. Justice Woods, points out there was
no evidence of waiver by defendant of this requirement, but
that it appeared as a matter of fact that the vice president
and treasurer of plaintiff was in extremely ill health at the
time of the accident, and that his temporary successor did
not know of the existence of the policy until after the bring-
ing of the suit, and that the same day he found the policy he
gave the casualty company notice of the accident. It seems

that practically all the office force of the manufacturing company had contracted smallpox about this time, which accounted for the failure to discover the policy.   Mr. Justice Woods says:

"In view of these facts, it is evident a jury could not reasonably reach any other conclusion than that the delay was excusable, and the notice given and the summons sent with all promptness to be fairly expected and exacted."

The case of *Craig v. Insurance Co.,* 80 S. C., 151; 61 S. E., 423; 18 L. R. A. (N. S.), 128; Am. St. Rep., 877; 15 Ann. Cas., 216, seems to be squarely on the point.   This was a suit on a health accident policy, which provided that written notice of an injury, or of any illness for which claim can be made, must be given to the company within ten days from date of accident or beginning of illness.   "Failure on the part of the assured or the beneficiary to comply strictly with such notice requirements shall limit the liability of the company to one-fifth the amount which would otherwise be payable under this policy."   The Court, speaking through Mr. Justice Woods again, held that the contract was reasonable, saying:

"The provision on which the defendant relies is not unreasonable, but, on the contrary, it is evident some such stipulation is necessary to the protection of the defendant, as an insurer against sickness, to enable it to investigate alleged illness, and thus protect itself against imposition.   Of course the insured would be excused from giving the notice if, from sudden and extreme illness or other cause, it became impossible for him to comply with the contract." *Stickley v. Insurance Co.,* 37 S. C., 69; 16 S. E., 280, 838. *Johnson v. Maryland Cas. Co.,* 73 N. H., 259, 60 A., 1009; 111 Am. St. Rep., 609.   *Whalen v. Equitable Acc. Co.,* 99 Me., 231; 58 A., 1057.   *Travelers' Insurance Co. v. Thornton,* 119 Ga., 455; 46 S. E., 678.

Coming to the case at bar, it was for the jury to say whether or not Levan was totally and permanently disabled as defined in the policy, and at the time the pre-

mium came due, by reason of this disability, whether he was incapable of furnishing proof, and whether the beneficiary gave notice with reasonable promptness under all the circumstances.

The appellant cites the case of *New York Life Ins. Co. v. Alexander,* 122 Miss., 813; 85 So., 93; 15 A. L. R., 314, which holds that insanity does not of itself excuse the payment of premium under a life insurance policy. There is no dispute about this as a general proposition, but in the case at bar the authority is inapplicable, because here the insurance company itself stipulated that total disability, whether caused by insanity or otherwise, would excuse the payment of further premiums, and the sole question of law raised by the exceptions is whether or not insanity, being the cause of disability and rendering the insured incapable of furnishing proofs, was an excuse for insured's failure to comply with the policy provisions in regard thereto.

It may be argued that the beneficiary should not have waited until after insured's death to give the company notice of his condition. In the first place, there is some evidence that the company had notice of the condition itself. The agent who went to collect the premiums before the policy lapsed testified that when he called on the insured he appeared to be a little peculiar, and it was testified to by the plaintiff, and not denied by this agent, that when she went to the agent to see about the policy the agent told her that when he went to see the insured to try to collect the premium he could not get any sense out of him. Further, it appears that while the beneficiary knew that a policy was in existence she had no knowledge of its terms, and could not secure possession of the policy for the reason that her insane husband had it locked up in a certain black box. Finally, prior to insured's death, she managed to get the policy, and she took it to the company's agent, who told her that it had lapsed, and, although she then and there informed him that

insured was insane and incapable of making his living, the agent failed to acquaint her with the policy provisions touching total disability, or with the fact that she must make proofs of disability, and admitted on the stand that at the time he did not know whether or not the policy had a disability provision. It therefore seems clear that there was evidence to go to the jury upon the question whether reasonable notice was given the company under all of the circumstances.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, BLEASE, and STABLER, concur.

MR. JUSTICE COTHRAN (dissenting): I cannot agree with Mr. Justice Ramage's opinion in this case for the reasons which follow.

This is an action by the plaintiff, as the named beneficiary in a policy issued June 5, 1920, by the defendant company, insuring the life of her husband, Barton Levan, a colored barber in the city of Sumter, in the sum of $2,500. He died on January 12, 1924, having paid the semiannual premiums as they matured upon the policy, with the exception of that which matured on June 5, 1923. The defense of the company was that the policy lapsed on July 6, 1923, by reason of the non-payment of the premium due on June 5, 1923, at that time, or within the 31 days of grace provided for in the policy.

The plaintiff sought to be relieved of the forfeiture thus claimed by the defendant upon the ground that the company had waived the payment of the premium due on June 5, 1923, by the provisions of what is called the "total disability" clause in the policy, the conditions of which the insured was unable to comply with on account of his insanity at the time of the maturity of the premium. It thus appears that the beneficiary concedes the failure of the insured to pay the premium due on June 5, 1923, and also his failure to comply

with the conditions of the total disability clause, but seeks to excuse such failure upon the ground of his insanity.

The printed argument of counsel for the insurance company contains this statement:

"For the purpose of this argument, it admits the mental derangement and total permanent disability of the insured within the meaning of the policy, and as construed by our Court of last resort in *Brown v. Missouri State Life Insurance Co.* (S. C.), 134 S. E., 224."

The following facts therefore are not in issue:

The policy was issued on June 5, 1920; the semiannual premiums were due on that anniversary and on December 5 of each year; the premiums were paid up to but not including June 5, 1923; that premium was not paid at maturity or within 31 days thereafter; the insured was insane, totally disabled, on June 5, 1923; that no notice of the total disability of the insured, or proof of the fact as required by the policy was given to the company prior to the maturity of the premium due June 5, 1923; that the insured died on January 12, 1924, in the State Hospital for the Insane; that thereafter and possibly before, but after default, the plaintiff notified the company that at the time of the maturity of the last premium the insured was insane.

The case was tried before his Honor, Judge Wilson, and a jury; the trial resulted in a verdict in favor of the plaintiff for the full amount of the policy with interest (I assume, from the time payment was due after the death of the insured, usually 60 days). From the judgment entered upon the verdict the defendant has appealed.

I do not deem it necessary to consider any other feature of the appeal than the refusal of his Honor the presiding Judge to grant the defendant's.motion for a directed verdict, upon the ground that it was conceded that the insured failed to pay the premium due on June 5, 1923, and failed prior to that date to make the proof of disability required by the policy; and, assuming that he was at that time totally disabled

by reason of insanity, such insanity did not excuse him or the beneficiary from complying with the conditions of the total disability clause of the policy necessary to complete the waiver by the company of the payment of the premium due on June 5, 1923, the non-payment of which constituted a lapse of the policy. The policy contains this provision:

"Upon failure to pay any premium or any part thereof when due, this policy, except as otherwise provided herein, shall immediately lapse."

The exceptions referred to (so far as the terms of the policy are set forth in the record) are the provision for 31 days of grace and the following, known as the "total disability," clause:

"The Metropolitan Life Insurance Company in consideration of an additional premium of $4.63, payable at the time and under the same conditions as the regular premium under the policy to which this agreement is attached, except that the additional premium shall cease on the anniversary of the premium of the policy after the insured has attained 60 years of age, doth hereby agree, that if while the above-numbered policy is in full force and effect, and before default in the payment of any premium, the company receives due proof that the insured, as the result of injury or disease, occurring and originating after the issuance of the policy, has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the company will allow the following benefits:

"(a) Provided said disability occurs before the insured attains 60 years of age, but not otherwise, the company, commencing with the anniversary of the policy next following receipt of such proof, will waive payment of each premium becoming due during such disability, and in addition, commencing six months from the receipt of such proof, will pay each month, during the continuance of such disability, to the insured or to the person designated by him for the pur-

pose, or if there be no such person disignated, then to such person as may be found by the company to have the care of the person of the insured, a monthly annuity of $10 for each $1,000 of original insurance under the policy. The waiving of premiums and the monthly annuity payments shall be in addition to all other benefits and shall not affect any provision in the policy, except if there be any indebtedness under the policy, the interest on such indebtedness shall, if not otherwise paid, be deducted from the monthly annuity payments. The insured shall not have the right to commute such monthly annuity payments."

I assume, as nothing to the contrary appears in the record or in the arguments, that the insured was under 60 years of age, and that the forgoing provision is applicable. Manifestly the provision is one of very great value to the insured; it assures, upon the conditions named, not only immunity from the payment of premiums as long as the disability continue, but a monthly stipend of $25 after the expiration of six months from the receipt of the proof required. Taken in connection with the general provision of lapse upon nonpayment of premiums, it is manifest that before the insured may be relieved of the consequence of nonpayment and be entitled to the special provision, it is only fair and just that he show compliance with the conditions prescribed for the enjoyment of the privileges accorded him. These conditions are plainly set forth: (1) The company must receive due proof that the insured has become totally and permanently disabled; (2) such proof must be furnished to the company while the policy is in full force and effect; (3) it must be furnished before default in the payment of any premium. It is conceded that no such proof was ever furnished, either while the policy was in force, before the default of June 5, 1923, or afterwards.

The plaintiff, however, contends that because the insured was insane at the time the payment fell due on June 5, 1923 (and for that reason was unable to comply with the condi-

tions named), he was excused from complying with any of them, and that the immunity provided took effect. How this result can be attained, when by the contract the immunity was dependent specifically upon compliance with certain conditions, which admittedly were not complied with, is beyond my comprehension. To have that effect something will have to be read into the contract which is not there; the policy would have to read that if at the time the premium of June 5, 1923, matured, the insured was insane, proof of that fact alone after his death would excuse compliance with the conditions. That it does not so read is manifest.

The basis of Mr. Justice Ramage's opinion appears to be an implied stipulation that if the insured should become insane, the proof of that fact required being impossible for him to furnish, by reason of his mental condition, the company could not insist upon it, as I gather from the following extract from the opinion:

"The evident purpose of such a provision in the policy was to preserve the insurance in the event the insured, on account of disability became unable to make the money to pay the premiums; and the clause should be construed so as to effectuate this intention."

According to this declaration, if the insured should become physically, as contrasted with mentally, disabled, he being thereby "unable to make the money to pay the premiums." Should, in order to "effectuate this intention," be relieved of the conditions to be performed by him in order to be entitled to the immunity. I do not imagine that any one would insist upon this contention.

Again, the opinion delcares:

"Accordingly, where the insured was rendered incapable of furnishing proofs of his disability *by reason of the very disability insured against,* then it must be conclusively presumed that the parties did not intend by the language used to deprive the insured of the benefit he was otherwise to receive." (Italics added.)

I do not understand that in the present case the disability insured against was insanity; it was a policy of life insurance —an insurance against death, not insanity. If the insurance had been against insanity, and the insured had been personally bound to furnish certain proofs within a certain time, there would have been much reason to invoke the rule stated; but even in such a case there appears to be no reason why the proof could not be furnished by some one other than the insured. So in the case of accident insurance, where the accident, "the very disability insured against," renders it impossible for the insured to comply with certain conditions, the rule announced may reasonably be invoked.

The cases cited by Mr. Justice Ramage are, with the sole exception of the case of *Marti v. Insurance Co.,* 208 Neb., 845; 189 N. W., 388; 29 A. L. R., 1507 (to which I shall presently advert), are cases where the loss or injury insured against had occured, and where it was sought to defeat recovery therefor upon the ground that certain conditions, thereafter to be performed, had not been complied with— conditions referring to notice of the loss or injury, proof of loss, and the like. Not one of them, with the exception of the *Marti case,* relates to the performance of a condition precedent to the vesting of any right in the insured.

I think that it is clear from the terms of the policy that the insured was in the first instance obligated to pay the June premium when it fell due, or submit to a lapse of forfeiture of all rights vested in him under the policy. The beneficiary now seeks to avoid the consequence of the default of the insured by establishing in the insured, a right guaranteed to him under the policy, upon certain conditions, to a remission of the premium, without the slightest attempt to show that those conditions have been complied with. That the conditions upon which the vesting of this right depended are conditions precedent is too plain for argument. A condition precedent is "one which is to be performed before some

right dependent thereon is performed; one which must be performed before the interest affected by it can vest; one that must happen before the estate dependent upon it can arise or be enlarged; one that must happen or be performed before the estate can vest or be enlarged." 12 C. J., 407.

In *Pearson v. Easterling*, 97 S. E., 238; 111 S. C., 124, it is held, quoting syllabus:

"Where an agreement imposes a duty upon the parties, they must show performance before they can claim rights thereunder."

In *Moore v. Sanders*, 15 S. C., 440, 40 Am. Rep., 703, it is said that a condition precedent is "a condition upon the happening of which an estate (or interest, I interpolate) will vest." All that the insured had, vested in him, was the right to a continuance of his insurance upon the prompt payment of the premium; he had no interest in the total disability clause until he had complied with the conditions imposed, which he is assumed to have agreed upon; and consequently these conditions must be held to have been conditions precedent.

In *Perkins v. Insurance Co.*, 93 S. C., 88; 76 S. E., 29 (opinion by Mr. Justice Watts), the Court said:

" 'The conditions annexed to a personal contract, like a policy of life insurance, must be performed according to the terms used, and the apparent intent of the parties, and are not satisfied by a performance *cy pres.*' 3 Steph. N. P., 2072. Every warranty in the policy is a condition precedent, and the assured must aver and prove performance of it."

"In the law of contracts, a condition precedent is a condition which must be performed before the agreement of the parties becomes a valid and binding contract." *Metropolitan Co. v. Goodman*, 10 Ala. App., 446; 65 So., 449.

In *Woodman v. Byers*, 62 Neb., 673; 87 N. W., 546; 55 L. R. A., 291; 89 Am. St. Rep., 777, it is said, quoting syllabus:

"In construing conditions in a policy of insurance, to be

complied with subsequent to an event resulting in loss or injury for which indemnity is claimed, with respect to the giving of notice of the loss or injury, and preliminary proofs thereof, a more liberal construction will be given in favor of the beneficiary than when the conditions are to be complied with prior to loss or injury for the purpose of continuing the policy in force and effect."

In *McLaughlin v. Equitable Co.*, 38 Neb., 725; 57 N. W., 557, the policy provided that where the insured defaulted in the payment of a premium, after three annual premiums had been paid, he would be entitled to paid-up insurance for a certain proportionate amount of the face of the policy, provided that he surrender the policy, duly receipted, within six months after such default. The insured did not comply with the above condition relating to surrender of the policy within the time stated, and brought suit to compel the issuance of the paid-up policy. The Court dismissed his suit, upon the ground that the surrender of the receipted policy, within six months, was a condition precedent to the right to demand paid-up insurance. There was no question in this case as to the insanity or the disability of the insured; I refer to the case as establishing the principle that the condition imposed was a condition precedent.

See, also, *Balthaser v. Insurance Co. (Ky.)*, 110 S. W., 258.

In *Insurance Co. v. Barbour*, 92 Ky., 427; 17 S. W., 796; 15 L. R. A., 449, the Court said:

" It is not a case where the policy ceased *pro tanto*, and a portion of the insurance remained in force, but the entire policy determined. It had no value after a default in the payment of premium. It is, however, provided that, inasmuch as the insured has made a certain number of payments, he shall, provided he does certain things, be entitled to a paid-up, non-participating policy for a certain sum. A new right is given to him provided he does certain things. They are conditions precedent to the vesting of the right.

It does not accrue until they are done. In the case of a forfeiture, rights already existing are divested, whereas in case of a condition precedent the right does not attach until it is performed. These policies provide that the insured shall be entitled to the paid-up insurance, provided all his indebtedness to the company, whether principal or interest, shall be paid, and the policies surrendered within six months from the time of default of payment of premium. This was of the essence of the contract."

To the same effect is *Union, etc., Co. v. Buxer*, 62 Ohio St., 385; 57 N. E., 66; 49 L.R. A., 737; *Munz v. Insurance Co.*, 26 Utah, 69; 72 P., 182; 62 L. R. A., 485; 99 Am. St. Rep., 830.

Another illustration of a condition precedent is found in the common provision for reinstatement after default in the payment of premiums. In such case the right of the insured is dead, and cannot be revived except upon compliance with the conditions of reinstatement. I do not apprehend that it would be contended that after default the insured would be excused from complying with the conditions of reinstatement upon the ground that during the period allowed for reinstatement he was insane and thereby prevented from complying with the conditions.

"Insured, as a condition to reinstatement after forfeiture for non-payment of premiums, must comply with the conditions imposed by the policy, so long as they are not in contravention of statute or of public policy." 32 C. J., 1356.

See, also, *Ginyard v. Insurance Co.*, 135 S. C., 48; 133 S. E., 227, where it is held that the conditions of reinstatement must be complied with, as with all conditions precedent.

The case of *Edgefield Mfg. Co. v. Casualty Co.*, 78 S. C., 73; 58 S. E., 969, was a case in which the question of non-compliance arose after the loss had occurred and the question was whether the liability of the insurance company should be defeated by the failure of the plaintiff to comply with the condition, caused by an epidemic of smallpox in the office

of the plaintiff company. With the liberality extended in cases where the loss has occurred and the insurance company seeks to avoid liability by reason of an alleged breach of a condition, the plaintiff was held excused from a literal compliance with the condition where it acted with reasonable promptness after it was in a position to comply. Clearly this is distinguishable from a case of condition precedent, where no loss has occurred and the right of the insured depends upon the performance of the agreed condition.

The same may be said of the case of *Craig v. Insurance Co.*, 80 S. C., 151; 61 S. E., 423; 18 L. R. A. (N. S.), 106; 128 Am. St. Rep., 877; 15 Ann. Cas., 216. The loss had occurred, and the plaintiff was unable by reason of extreme illness, the disability insured against, from complying strictly with the condition. Whatever right he had, had already vested, and it was sought to defeat it by his failure to comply with a condition. The same may be said of the case of *Germania Ins. Co., v. Boykin*, 12 Wall. (79 U. S.), 433; 20 L. Ed., 442. The loss by fire had occurred, and the plaintiff was sought to be concluded by his failure to file proofs of loss by reason of his insanity. The Court held that if he was so insane as to be incapable of making an intelligent statement, that would of itself excuse that condition of the policy. Whatever right he had had already vested, a very different situation from the case at bar, where whatever right the insured had had lapsed by the failure to pay the premium and could only revest upon his compliance with the condition precedent.

The case of *Insurance Co. v. Watson*, 6 Ga. App., 193; 64 S. E., 693, is similar. There it was held that where the disability insured against, sickness, prevented the insured from strictly complying with the condition of notice to the company, the notice should be held sufficient if extended within a reasonable time. It was distinctly held that as the provisions operated upon a contract only subsequent to the fact of injury or sickness, they should therefore receive liberal and

reasonable construction in favor of the beneficiary under the contract—a very different situation from that where the vesting of a right depends upon the performance of a condition precedent.

There is a very marked distinction between the case of *Marti v. Insurance Co.*, 108 Neb., 845; 189 N. W., 388; 29 A. L. R., 1507 (strongly relied upon by Mr. Justice Ramage), and the case at bar. In that case the policy was issued upon payment of the initial premium on January 10, 1916; the insured became totally disabled and incurably insane on March 1, 1916, and continued in that condition until his death in December, 1917; default was made in the payment of the annual premium due in January, 1917 (the days of grace carrying the policy to February 10, 1917). The policy contained the usual provision for forfeiture upon nonpayment of the premium; it also contained a total disability clause quite similar to that in the case at bar, but with two significant differences: It contained no limitation of time in which the proof of disability must be presented or option exercised; and upon the back of the policy there was printed: "Should the insured become totally and permanently disabled, the policy becomes paid up for its face amount at the option of the insured; that is, no more premiums are payable." The points of difference are obvious; the policy here specifically required the proof to be furnished while the policy in force and before any default in the payment of premiums be made; it contains no such endorsement upon the policy as was upon the policy in the *Marti case*. The beneficiary, after the death of the insured made the necessary proof and the decision based largely upon the two points above referred to, which are absent in the case at bar, was to the effect that the proof was in time. The reasoning of the Court is not at all satisfactory, and in the long list of cases cited to sustain its conclusion not one appears to me to do so. The annotator states that only one other case had been found upon the point, a Georgia case, *Tyson v. Equitable*

*Co.,* 144 Ga., 729; 87 S. E., 1055, and that it took a contrary view.  In the latter case the insured became insane before the last premium became due and made default in the payment of that premium.  Upon such default the insured became automatically entitled to paid-up insurance for a certain amount fixed in the table, a part of the policy, unless he should exercise within 30 days the option of taking extended insurance for the full face of the policy for a certain time also fixed.  The option was not exercised during the limited period or within the lifetime of the insured.  He died within the year, and the administrator attempted to exercise the option for extended insurance, which was maifestly to his advantage.  The Court held:

"This option was not exercisable after 30 days, notwithstanding the insanity of the insured during such time."

In another Georgia case, prior to the *Tyson case,* the policy provided for the lapse of the policy in the event of the non-payment of a premium note at its maturity, but it also contained a total disability clause quite similar to that in the case at bar.  At the time of the maturity of the note the insured was ill with typhoid fever and died shortly thereafter.  Upon the contention that his physical disability excused the failure of the insured to exercise his option, the Court said:

"One (of the options) was that from the date of such proof (of total disability) the premiums payable for the remaining years should cease or be remitted during the continuance of the incapacity. * * * In order for either one of these options to be exercised, it was necessary that due and satisfactory proof should be made to the company.  This was not done; nor was there any exercise of the option."

Judgment for the company in the Court below was affirmed, upon a directed verdict.

In Joyce, Ins. (2d Ed.) p. 2505, it is said:

"And an option provided for in a life insurance policy stipulating that upon satisfactory proof to the company of

the incapacity or disability of the insured, the premiums payable for the remaining years shall cease or be remitted during the continuance of the incapacity * * * was not rendered operative by the fact that the insured was sick with typhoid fever when one of the premium notes fell due and that he so remained until his death some weeks thereafter."

The case of *Thorensen v. Mass. Ben. Ass'n,* 68 Minn. 477; 71 N. W., 668, is a case in point and instructive. The syllabus by the Court is as follows:

"The plaintiff became a member of the defendant association, and received a policy issued by it, conditioned that if he complied with all the rules and regulations, and paid certain annual dues, and fixed bi-monthly assessments, there should be paid to a certain named person the sum of $2,500 at his decease. If he failed to comply with these conditions, the policy by express terms, lapsed, became void, and all of the plaintiff's right thereunder became forfeited. It was also provided in the policy that, in the event plaintiff became totally and permanently disabled (such disability to be determined in a certain way), surrendered his policy for cancellation, and made a request therefor in writing, the association would pay him $1,250 in full discharge and settlement of all claims. Held, although plaintiff became disabled while the policy was in force, that he could not recover under this indemnity clause, unless he exercise the option conferred by its terms before the policy lapsed, became void, and his rights thereunder were forfeited for non-payment of assessments. The right of action under such a clause arises upon the exercise of the option, not upon the happening of the disability."

The Court said:

"By the terms of the contract, two things, at least, must occur, to give a right of action under the clause in question: First, the member's total and permanent disability; second, the exercise of his right of election as between the primary liability of the association or (and?) what may be called

its 'optional liability' although the disability may have been complete while the policy was in force, the plaintiff's right to elect terminated when it lapsed, became void, and all of his rights thereunder were forfeited for non-payment of the stipulated assessments."

In *Hanson v. Insurance Co.*, 229 Ill. App., 15, the Court holds (quoting syllabus):

"Where a life policy" provides "for the waiver of premiums during * * * total disability, * * * upon the furnishing * * * of proof * * * of such disability and the * * * indorsement thereof by the insurer on the agreement, and * * * the insured was disabled five days before his premium was due and died after the due date without payment thereof or without making any proof of disability, there can be no recovery on the policy."

A propos of the contention that the beneficiary should be excused from complying with the conditions of the policy for the reason that she had never seen the policy and was therefore ignorant of its terms, it is said in *Klein v. Insurance Co.*, 104 U. S., 88; 26 L. Ed., 662:

"The alleged fact that she (the beneficiary) had no knowledge of the existence and terms of the policy does not relieve her default. If the fact be true, her ignorance resulted from the neglect of her husband, who, in respect to this contract of insurance, was her agent, in not informing her about the insurance upon his life and the terms of the policy. The bill is, therefore, an effort by her to obtain relief in equity against the appellee from the consequences of the carelessness or neglect of her own agent."

The insurance company has some rights in the premises which are entitled to recognition before it should be held to a contract, the conditions of which have not been complied with, due to no fault on its part. In addition to its right to insist upon the condition that the proof of total disability must be presented while the policy was in force, and before a default in the payment of premiums occurred, it had

the right to have the proof submitted to it and to pass upon
such proof; not that it had the right arbitrarily to decide the
question of total disability, but it had the right, in the first
instance, to act in the decision fairly, honestly, and reason-
ably, and unless it acted arbitrarily, capriciously, and un-
reasonably, its decision would be conclusive. *Thomas v. In-
surance Co.,* 63 S. C., 290; 41 S. E., 464. *Guaranty Co. v.
Charles,* 92 S. C., 288; 75 S. E., 387; Ann. Cas., 1916B,
687; *Singleton v. Cuttino,* 105 S. C., 44, 89 S. E., 385. *Fur-
man v. Tuxbury,* 112 S. C., 71, 99 S. E., 111. As it stands
they have not had a word to say in reference to the con-
dition of the insured prior to the default. The case is
about to be decided upon the fact, afterwards found by
a jury, that the insured was insane, and therefore totally
and permanently disabled on the day the premium fell
due; as if that had been the condition upon which the re-
mission of the premium was to become effective.

I think that the admitted facts in this case, from the
witnesses for the plaintiff, demonstrate the right which the
company had to pass upon the question whether the insured
would have been entitled to the benefit of the total disability
clause. The clause does not make out a case of immunity
from the payment of premiums simply by showing the in-
sanity of the insured on June 5, 1923; it requires that the
disability must be so great that the insured was "unable at
any time to perform any work or engage in any business for
compensation or profit." The evidence shows that the insured
regularly kept his shop open for months after June 5th, shav-
ing and hair cutting customers and receiving income, al-
though at times behaving queerly. The mute evidence of his
customers offers a strong negation of their conception of his
insanity; for I cannot conceive of greater idiocy than the
recumbent submission of an open throat to an insane barber.

It is universally conceded that the insanity of the insured,
which has prevented his payment of the premium at the
appointed time, is no reply to the defense of lapse or forfeit-

ure of the policy, for the reason that such payment is a condition precedent to the further vitality of the policy.

In *Thomas v. Insurance Co.,* 104 U. S., 252; 26 L. Ed., 765, it is said:

"In the second replication the excuse set up is, that before the note fell due Thompson became sick and mentally and physically incapable of attending to business until his death on the 3d day of November, 1874, and that the plaintiff was ignorant of the outstanding note. We have lately held, in the case of *Klein v. Insurance Company,* 104 U. S., 88 [26 L. Ed., 662], that sickness or incapacity is no ground for avoiding the forfeiture of a life policy, or for granting relief in equity against forfeiture. The rule may, in many cases, be a hard one; but it strictly follows from the position that the time of payment of premium is material in this contract."

To the same effect is *New York Life Ins. Co. v. Statham,* 93 U. S., 24; 23 L. Ed., 789.

In note to 15 A. L. R., 318, the general rule supported by the decisions of many Courts, is thus stated:

"The rule appears to be well settled that insanity or incapacitating sickness of the insured, because of which he fails to pay, when due, a premium or assessment on an insurance policy, will not excuse such failure so as to prevent a forfeiture, termination, or suspension of his rights, where the policy or rules of the company expressly provide for such forfeiture, termination, or suspension in the event of nonpayment."

Is it logical to hold that insanity at the time a premium falls due, which prevents the insured from taking it, is no reply to the company's defense of lapse or forfeiture of the policy, but that insanity at such time, which prevents him from taking advantage of a conditional agreement by complying with the conditions, is a valid reply to such defense, and has the effect of binding the company to an agreement which it only offered to make upon certain clear, defi-

nite, and reasonable conditions, which have not been complied with?

It is stated in the opinion of Mr. Justice Ramage that the case of *New York Life Insurance Co. v. Alexander,* 122 Miss., 813; 85 So., 93; 15 A. L. R., 314, is inapplicable as authority for the reason that it decides, what is conceded, that:

"Insanity does not of itself, excuse the payment (non-payment?) of premium under a life insurance policy. There is no dispute about this as a general proposition, but in the case at bar the authority is inapplicable, *because here the insurance company itself stipulated that total disability whether caused by insanity or otherwise, would excuse the payment of further premiums."* (Italics added.)

I respectfully submit that right here the error of the learned Justice is accentuated. The insurance company has made no such stipulation. On the contrary, the total disability clause above quoted clearly discloses the stipulation, "that if, while the above numbered policy is in full force and effect, and before default in the payment of any premium, the company receives due proof," of the total disability, it will allow the remission—a very different proposition. The case is about to be decided precisely upon the theory thus advanced—that all that the beneficiary had to prove was that the insured was insane at the time the June premium fell due, regardless of the three conditions specifically contained in the agreement.

Furthermore, an examination of that case shows that it presents almost, if not quite, an exact parallel to the case at bar. The syllabus is erroneously limited to the proposition that the insanity of the insured will not avoid the forfeiture consequent upon the failure to pay the premium when due. The facts of the case are these: The policy was issued on June 5, 1917, and called for quarterly premiums beginning August 8, 1917; the premiums were paid up to but not including August 8, 1918; that premium was not paid at

maturity or within the period of grace thereafter, or at any time. About June 1, 1918, the insured was stricken with apoplexy, and the contention of the beneficiary was that infirmity avoided the forfeiture provided for in the policy on account of default in the payment of the August premium and also excused the insured from making proof of the alleged disability which, in practically identical terms with the total disability clause in the case at bar, remitted the premium upon similar conditions. That this issue was presented is clearly demonstrated by the argument of counsel for the company, abstracted in the report as follows:

"Incapacitating sickness was also no excuse for the insured's failure to comply with the conditions of the policy entitling him to a waiver of the premium."

—and by the opinion of the Court as follows:

"The authorities seem to be against the view adopted by the trial Court. The policy sued on was, and is, the contract between the company and the insured. The company agreed to pay a certain sum upon the reception of the proof provided for by the contract of insurance. As was said by the Supreme Court of New York in *Wheeler v. Connecticut Mutual Insurance Co.,* 82 N. Y., 550; 37 Am. Rep., 597: 'While as a general rule, where the performance of a duty created by law is prevented by inevitable accident, without the fault of a party, the default will be excused, yet when a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither inevitable accident, nor other unforeseen contingency not within his control, will excuse him, for the reason that he might have provided against them by his contract.' "

And:

"It is our opinion that the verdict (for the plaintiff) was in direct opposition to the provisions of the terms of the contract. *The proof of disability was never made.*" (Italics added.)

But, regardless of all of what has preceded, I think that

an absolutely insuperable obstacle to the plaintiff's recovery is this: Assuming that the notice given by the wife of the insured, in September, 1923, that he was insane, is a sufficient compliance with the requirement of proof of his total disability (which is a violent assumption not only upon the ground that it was not proof in any sense of the word, but was given at a time when she had never seen the policy and could not, therefore, have been an effort to comply with its conditions), the total disability clause declares that upon submission of the proof required, "the company commencing with the anniversary of the policy next following receipt of such proof, will waive payment of each premium becoming due during such disability, etc." The anniversary of the policy next following the alleged proof in September, 1923, was June 5, 1924, six months after the death of the insured.

In *Mid-Continent Insurance Co. v. Skye,* 113 Okl., 184; 240 P., 630, it is said (quoting syllabus) :

"In insurance policy, provision that, commencing with anniversary of policy next succeeding receipt of proof of disability, company would on each anniversary waive payment of premium for ensuing year, term 'anniversary' means yearly recurring date of policy, and benefit of waiver of premiums by reason of receipt of proof of permanent disability is postponed until next anniversary of policy succeeding receipt of such proof."

I think, therefore, that the defendant's motion for a directed verdict should have been granted.