EVA J. MARTI, APPELLEE, V. MIDWEST LIFE INSURANCE COMPANY, APPELLANT.

FILED JUNE 28, 1922. No. 21988.

1.  Insurance: FORFEITURE: MENTAL INCAPACITY. Where there is no plain and positive language in a contract of insurance which requires performance by the insured, personally and within a certain time, a requirement that, after the happening of an event which entitles him to exercise certain options, the insured shall furnish proofs of this fact, and exercise one of the specified options as a condition precedent to the right to recover, will not be construed to apply in cases where performance is prevented because of the insured becoming mentally incompetent to act. In such a case, the insured will not forfeit his insurance if he performs the stipulated act within a reasonable time after his mental capacity is restored.

2.  ——: ——: ——: RIGHTS OF BENEFICIARY. In such a case where the insured dies without regaining ability to act, and the beneficiary, who had no knowledge of the existence of the policy, or its conditions, until some time after his death, furnishes proof within a reasonable time that the insured became incurably insane and was unable to exercise the option or furnish the proofs while the policy was in force, such beneficiary is entitled to obtain the benefits of the option provided in the policy.

3.  ——: EXERCISE OF OPTION. Where no time limit is fixed in a policy within which such an optional provision must be exercised, if it is exercised within a reasonable time under all the circumstances of the case, it is sufficient.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. Affirmed.

Lincoln Frost and J. W. Kinsinger, for appellant.

*T. S. Allen, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ.

LETTON, J.

Defendant insurance company issued a policy of life insurance to Albert F. Marti for $1,000 for the benefit of his wife, Eva J. Marti. The premium was paid for one year, beginning February 10, 1916, and the policy was delivered. The insured died on December 25, 1917, without having paid the premium due in January, 1917, so that the policy lapsed on February 10, 1917. It is alleged that the insured became totally disabled and incurably insane on or about March 1, 1916, and remained in that condition until his death. His wife was not aware of the existence of the policy and found it among his papers some time after his death. She then gave notice and proofs of death to the company, which refused to pay, mainly upon two grounds, first, that the policy lapsed on February 10, 1917, and, second, that the right to exercise certain options provided in the policy was a personal right and could only be exercised by the insured, or by some one for him during his lifetime. Other defenses set forth in the answer were, that the disability arose from a disease originating prior to the delivery of the policy, lack of proofs for more than two years after the death, and the falsity of answers made by the insured to questions in the application. The jury found for plaintiff and judgment was rendered accordingly.

The policy contained the usual provisions for forfeiture upon nonpayment of the premium, and also contained the following provision: "Should the insured, no premium being in default, become totally and permanently disabled through bodily injury or disease originating after the delivery of this policy, so that there is no work, occupation or profession, either then or thereafter, that the insured can do or follow to earn or obtain any wages, compensation or profit, and proofs of such condition are furnished

to the company at its home office to its entire satisfaction, the insured, after receiving notice from the company that it has approved the evidence submitted of such total and permanent disability, may select one of the following options: First. Retain this policy as a fully paid-up policy for its face amount, but without the extra indemnity in case of accidental death. (The other options are of no import in this case.) Without prejudice to any other cause of disability, * * * incurable insanity will be considered as total and permanent disability within the meaning of this provision."

Upon the back of the policy we find the following printed statement: "Should the insured become totally and permanently disabled, the policy becomes paid-up for its face amount at the option of the insured; that is, no more premiums are payable."

The trial court fairly submitted all defenses to the jury, other than the two principal ones mentioned, and, since the evidence was conflicting, the verdict settled these issues in favor of plaintiff.

In its brief the insurance company concedes: "That the insured became totally and permanently disabled within the meaning of the policy March 1, 1916, and remained so thereafter until his death December 25, 1917." The plaintiff bases her right to recover on the proposition that, since the insured became totally and permanently disabled upon March 1, 1916, and so remained until his death, he was incapable of giving the proofs or exercising an option, and that therefore she had the right, when she discovered the policy, to furnish the proofs required and exercise the option. The contention of the company is that the exercise of the optional provisions in such a case is personal to the insured, so that when his mental disability, or incurable insanity, rendered him incapable of making proof, or selecting an option, he, or his beneficiary, lost all benefit of the optional provisions; that provisions giving additional rights to the insured upon the happening of certain events, or the performance of certain acts

by the insured, in case, of disability, are ancillary to the main purposes of the policy, which is life insurance, and are strictly construed, and that happening of the events, or performance of the acts, are conditions precedent to the obtaining of any rights thereunder; that, even though the insured is incurably insane, proofs of such condition must be furnished by the insured himself, and not by any one for him, and he must select one of the options or lose all rights under the policy, and that those conditions must be met while the policy is in force and has not lapsed on account of failure to pay the next premium due.

The general rule, where there is no positive language in the contract which requires performance by the insured personally, and at all events, is stated as follows in *Comstock v. Fraternal Accident Ass'n,* 116 Wis. 382: "It is considered that a requirement in a contract of insurance that the insured shall, after suffering loss, perform some act as a condition precedent to the right to recover therefor, does not include cases where performance is prevented without-fault of the assured, because of his being incapacitated to act in the matter; that in such cases the assured will not forfeit his insurance if he performs the stipulated act within a reasonable time after a mental capacity to do so shall have been restored to him."

The parties here must be considered to have contracted with reference to this rule of construction, in the absence of any more definitely restrictive language in the contract. It was impossible for the insured to act on account of his insanity. It was equally impossible for the beneficiary to act within the year the policy was in force because she had no knowledge of its existence, or its conditions. The policy contains no limitation of time in which the proof of disability must be presented, or option exercised. The beneficiary did act within a reasonable time under all the circumstances, which is all that was required.

In *Woodmen Accident Ass'n v. Pratt,* 62 Neb. 673, it was held that strict compliance with the terms of the

Marti v. Midwest Life Ins. Co.

policy as to election and notice are not required, when the same was impossible of performance, and that, where an' accident deranged the mind of the insured so that he could not independently give notice and information regarding the accident and injury within the time stipulated, this excused him from compliance with the conditions of the policy in that regard during the existence of the disability. Though these were accident policies, the same principle applies.

Other cases relevant to the point presented are, *Grand Lodge, A. O. U. W., v. Brand,* 29 Neb. 644; *Phœnix Ins. Co. v. Holcombe,* 57 Neb. 622; *Chapin v. Ocean Accident & Guarantee Corporation,* 96 Neb. 213; *Hilmer v. Western Travelers Accident Ins. Ass'n,* 86 Neb. 285; *Midland Glass & Paint Co. v. Ocean Accident & Guarantee Corporation,* 102 Neb. 349; *Reed v. Loyal Protective Ass'n,* 154 Mich. 161; *Rathbun v. Globe Indemnity Co.,* 107 Neb. 18; *Veal v. Security Mutual Life Ins. Co.,* 6 Ga. App. 721; *Munz v. Standard Life & Accident Ins. Co.,* 26 Utah, 69; *Roseberry v. American Benevolent Ass'n,* 142 Mo. App. 552.

Complaints are made of several of the instructions, but they are based on defendant's view of the construction of the contract, and what has been said disposes of the points raised.

The case of *Thorensen v. Massachussetts Benefit Ass'n,* 68 Minn. 477, cited by defendant, in which it was held that the insured must exercise the option while the policy is still in force, is dissimilar in its facts, since it does not contain the element of insanity. Apparently there was nothing to prevent the notice being given while the policy was in force and while the insured was a member in good standing of the benefit association. Furthermore, it would be a harsh rule that would say that in a case where a man was injured, so as to be totally *non compos mentis,* within a few hours before the next payment on his policy became due, and while it was still in force, the occurrence of the very contingency he was insuring against should deprive him, or his beneficiaries, of the benefit of the con-

tract. This seems to us to be the logical result of the Minnesota case, if construed as defendants insist.

Finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.