The bill of complaint originally contained two counts, the subject-matter of the first count being a $5,000 life insurance *Page 536 
policy and the second count a $15,000 life insurance policy. The second count has been abandoned.
The complainant alleges and the proofs show that there was issued to him by the defendant company a life insurance policy providing for the payment to the beneficiary of $5,000 upon proof of death. This policy contained among its provisions a clause known as a "waiver of premiums" clause, which reads as follows:
"The Company, by endorsement hereon, will waive payment of the premiums thereafter becoming due if the insured, before attaining the age of 60 years and after paying at least one full annual premium and before default in the payment of any subsequent premium shall furnish proof satisfactory to the Company that he has become wholly and permanently disabled by bodily injury or by disease so that he is and will be permanently, continuously, and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation."
On the 2d day of September, 1922, which was before the complainant attained the age of sixty years, he suffered a paralytic stroke, and the evidence discloses that from that time, continuously to the present time, complainant has been permanently and wholly prevented, by reason of the stroke, from performing any work for compensation or profit or from following any gainful occupation, and that he will continue so to suffer until his death.
Defendant, on February 19th, 1931, notified complainant that it "elects to and does hereby rescind the reinstatement of said policy" and as a consequence, complainant has filed his bill seeking to compel a reinstatement of the policy and for a return of premiums paid by complainant in ignorance of his alleged right to have the benefit of the waiver of premiums after his illness of September, 1922.
The reason relied upon by defendant for the rescission of the policy was fraud on the part of complainant in a reinstatement of the policy, which lapsed in May of 1930 by reason of non-payment of the April, 1930, premium.
On December 31st, 1930, complainant, by letter, notified defendant company of its total disability. He contends that he also procured a written notice thereof to be sent by *Page 537 
his son in November of 1922. From the evidence I find that if the letter claimed to have been mailed at that time was, in fact, written, that it never reached the defendant company, and if it did, its contents did not furnish proof of total disability as required by the waiver clause.
Complainant also contends that on frequent occasions, starting about six months after his stroke, he visited the Philadelphia offices of the company and that his condition was evident to the employes of that branch and that through these visits the company had notice of his condition.
The waiver clause provides for proof satisfactory to the company of a condition of total disability, and I conclude that his visits to the Philadelphia office and business transactions there did not constitute such proof.
These findings of fact result in this situation — a stroke in September of 1922 and an attempted proof of total disability mailed December 31st, 1930.
In the meantime the policy had lapsed twice by reason of non-payment of premiums. With the first lapse I am not concerned because defendant bases its rescission on what happened when the policy lapsed for non-payment of the April 22d 1930, premium.
This premium was due on April 22d 1930, and the policy provided for thirty-one days of grace in its payment, which would make the last day for payment the 23d day of May. From the evidence, it clearly appears that this premium could not, by any possibility, have been paid before the 24th day of May, and it is also quite evident from the testimony that it was not received by the company until May 28th. The check itself was dated May 24th, 1930, and the envelope bearing the remittance, according to the records of the defendant company, was postmarked May 27th, 1930. This check, when received by the Philadelphia office, was found to be a few cents short and was not credited until sometime after May 27th, when the deficiency was made up in cash. The policy, by its terms, was therefore lapsed and the effort on the part of complainant to show otherwise by the evidence totally fails. There was a weak attempt to prove that the *Page 538 
premium check above mentioned was sent after a premium notice was received by the assured, which premium notice was alleged to have indicated that the final day for payment was of a subsequent date to the final date as fixed by the policy. I disregard this evidence because of its inconclusive nature, and taking that view of it, it is unnecessary to decide whether or not such an erroneous premium notice would change the terms of the policy.
The policy being lapsed for non-payment of premium, complainant, on the 31st day of May, 1930, signed an application for reinstatement and the reinstatement was recommended as of June 3d 1930, and in pursuance of the recommendation the policy was reinstated.
On the application for reinstatement, complainant, in response to printed questions, answered under his own hand that he was "to the best of his knowledge and belief, in the same condition of health as he was when the policy was issued" and that "within the past two years he had had no illnesses, diseases," c., and still over his signature, he said: "I hereby certify that the foregoing answers are full, complete and true and agree that the company, believing them to be true, shall rely and act thereon."
Complainant, of course, knew of his condition at the time he made the above representations, and on the 19th day of February, 1931, the company rescinded its contract of insurance because of the false representations upon which this reinstatement was secured, and tendered to complainant a refund of premium and interest. This was done after the notice of disability of December 31st, 1930, as a result of which notice the company instigated its investigation which resulted in the rescission.
Complainant says that when he signed the application for reinstatement and made the untrue answers to the questions asked therein, that he thought it was a mere matter of form and did not mean anything, but the fact is that any thought that he may have had in that respect was not the result of anything said or done by the defendant company or any of its representatives. The application for reinstatement was *Page 539 
signed in Atlantic City and not in the presence of the defendant's representatives.
That the company has a right to rescind for fraud in connection with the reinstatement is well settled. Chuz v. ColumbianNational Life Insurance Co., 10 N.J. Mis. R. 1145;162 Atl. Rep. 395; Acacia Mutual Life Assn. v. Kaul, 114 N.J. Eq. 491.
Complainant says that the policy should be reinstated because the benefit of the waiver of premium clause enured to him upon the happening of the stroke in September of 1922 and not upon the furnishing of proof thereof. He also contends that the evidence would support the finding that he had furnished other proofs than the letter of December, 1930, but in this factual question I have decided against him.
If the waiver clause should be construed to go into effect upon the happening of the disability, the policy did not lapse for non-payment of the April premium and the policy should be reinstated.
I proceed to a construction of that clause and recognize that in approaching the question of a construction of the waiver of premium clause I am bound by certain well recognized legal principles, such as Harris v. American Casualty Co.,83 N.J. Law 641; Michler v. New Amsterdam Casualty Co.,104 N.J. Law 30; affirmed, Ibid. 663; Gans v. Columbia Insurance Co.,99 N.J. Law 44; affirmed, 100 N.J. Law 400; Smith v. Fidelity andDeposit Co., 98 N.J. Law 534; Bohles v. Prudential InsuranceCo., 84 N.J. Law 315; Hampton v. Hartford Fire Insurance Co.,65 N.J. Law 265.
With these rules in mind, as laid down in the above cases, I must determine whether the insured is entitled to waiver of premium upon the mere happening of the disability, without proof thereof, having already found that proof of disability as required by that clause was not furnished the defendant company until December 31st, 1930.
It does not seem to me that there is any ambiguity or uncertainty about the language used in the policy, and that it clearly and distinctly says: "The company, by endorsement, *Page 540 
will waive * * * if the insured, before the age of sixty * * * and before default in the payment of any subsequent premium,shall furnish proof satisfactory to the company that he has beenwholly and permanently disabled, so that he will be permanently,continuously and wholly prevented thereby from performing anywork," c. (Italics mine.)
It is quite clear that the thing that gives rise to the right to a waiver of premiums is not that there exists the disability spoken of, but that when such a condition of disability arises the company will "by endorsement" on the policy waive premiums, provided the disabled insured, before the age of sixty, and before default in the payment of premiums becoming due after the disability, shall furnish proof of such disability to the satisfaction of the company. The furnishing of proof satisfactory to the company is a condition precedent to the right to claim a waiver.
There is nothing harsh about the requirements of this contract. It is based on fair dealing to both parties. The assured is given the right to secure a waiver and the company, before it waives, has a right to investigate the claim of disability and be assured, by proof, that the claimed disability, in fact, exists, and being satisfied, the company gives the assured an endorsement to that effect, so that his policy is the evidence of the company's acknowledgment of his claim.
There appears to be no reported case in New Jersey dealing with the question above discussed, i.e., an interpretation of the waiver of premium clause and a pronouncement as to whether or not the furnishing of proof is a condition precedent to the right to the waiver on the part of the assured. There are, however, numerous cases in other jurisdictions, most of which support my interpretation of the waiver clause.
In the many reported decisions which I have reviewed, I find none which deal with the state of facts before me. Here the complainant is still alive and says that he was unaware of the waiver of premium clause in his policy, although the policy had been in his possession for eleven years. In the cases I have read, that which seems to have caused such a *Page 541 
diversity of opinion as exists, arises when the question of impossibility of performance on the part of the assured is present, i.e., when by insanity, accident or fatal sickness the assured, from the time he is stricken, is rendered incapable of furnishing proof, and so remains until death overtakes him, or in cases where there is an ambiguity in the waiver clause.
A great majority of the courts hold that even insanity, or incapacitating sickness of the insured, because of which he fails to pay, when due, a premium or assessment on an insurance policy, will not excuse such failure so as to prevent a forfeiture, termination or suspension of his rights where the policy or rules of the company expressly provide for such forfeiture, termination, or suspension in the event of non-payment. These cases are annotated in 15 A.L.R. 318.
 Thompson v. Insurance Co., 104 U.S. 252, is cited in most of the cases dealing with the construction of waiver clause, and while that case does not construe it, it is authority for the fundamental law that while "courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party, on which to base a reasonable excuse for the default."
In New York Life Insurance Co. v. Alexander, reported in122 Miss. 813; 85 So. Rep. 93, the supreme court of Mississippi held, in reversing the trial court, that:
"The policy sued on was and is the contract between the company and the insured. The company agreed to pay a certain sum upon the reception of the proof provided for by the contract of insurance. As was said by the supreme court of New York in Wheeler v.Connecticut Mutual Insurance Co., 82 N.Y. 550; 37 Am. Rep. 597:
`While as a general rule, where the performance of a duty created by law is prevented by inevitable accident, without the fault of the party, the default will be excused, yet when a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither inevitable accident, nor other unforseen contingency not within his control, will excuse *Page 542 
him, for the reason that he might have provided against them by his contract.' * * * The rule may, in many cases, be a hard one."
In the case of New England Mutual Life Insurance Co. v.Reynolds, 217 Ala. 307; 116 So. Rep. 151; 59 A.L.R. 1075, the court construed a waiver of premium clause and held:
"Furnishing of proof of disability to the insurer is a condition precedent to the waiver of premium payments. Theentire structure of the agreement negatives the idea of aself-operating waiver in the event of total disability, butimposes a contractual obligation on the company to waive premiumswhen `due proof' is furnished."
In Penn Mutual Life Insurance Co. v. Milton,33 Ga. App. 634; 127 S.E. Rep. 798, the Georgia court of appeals cited with approval the above ruling.
In Courson v. New York Life Insurance Co., 295 Pa. 518;145 Atl. Rep. 530, the court held that the company was only to waive the premiums and endorse the waiver on the policy if the policyholder furnished proof satisfactory to the company of his disability. The company was the judge of the proof. The requirement of notice of the disability before the company acted was a salutary one. It enabled the company to investigate before waiving payment of the premiums and guarded it against malingerers and frauds.
Also Brams v. New York Life Insurance Co., 299 Pa. 11;148 Atl. Rep. 855. To like effect, Illinois Bankers Life Assn. v.Byassee, 169 Ark. 230; 275 S.W. Rep. 519; Franklin LifeInsurance Co. v. Fisher, 164 Okla. 193; 23 Pac. Rep. (2)151.
In Bergholm v. Peoria Life Insurance Co., 284 U.S. 489;76 L.Ed. 416, there was a provision that "upon receipt by the company of satisfactory proof that the insured is totally and permanently disabled," the company would pay the insured all premiums becoming due thereon after the receipt of such proof, and in addition to that, would pay to the insured a monthly income. Insurer died April 18th, 1929. Claim for disability benefits from December 1st, 1927, to *Page 543 
April 1st, 1929. Last premium was paid May 27th, 1927. No premium was paid after that. Mr. Justice Sutherland held:
"Long prior to the death of the insured the policy had lapsed. Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof."
The New York courts have uniformly held that the furnishing of due proof is a condition precedent. Orr v. Mutual LifeInsurance Co. of New York, 57 Fed. Rep. 2d 901; Whiteside
v. North American Accident Insurance Co., 200 N.Y. 320;93 N.E. Rep. 948.
The result of the reasoning of these cases is that where an insurance company agrees to waive premium payments upon due proof of disability of a permanent character, that the insurer, in order to protect itself against fraud, may provide for such notice as will enable it to investigate the claim of disability, and that notice of disability and endorsement of the waiver of premiums are substantial provisions of the contract and conditions precedent to recovery.
Other cases to like effect are: Smith v. Missouri State LifeInsurance Co., 134 Kan. 426; 7 Pac. Rep. 2d 64; Berry v.Lamar Life Insurance Co., 165 Miss. 405; 142 So. Rep. 444;Walters v. Jefferson Standard Life Insurance Co., 159 Tenn. 541; 20 S.W. Rep. 2d 1038; Hall v. Acacia Mutual LifeAssn., 164 Tenn. 93; 46 S.W. Rep. 2d 56; NorthwesternMutual Life Insurance Co. v. Dean, 43 Ga. App. 67;157 S.E. Rep. 878; Wick v. Western Union Life Insurance Co., 104 Wn. 129; 175 Pac. Rep. 953.
As against the authority of the above cited cases, complainant cites and relies on Minnesota Mutual Life Insurance Co. v.Marshall, 29 Fed. Rep. 2d 977, and in that case the court, construing a waiver clause which it held to be ambiguous and which is substantially different from that in the instant case, did hold that under the facts before it: *Page 544 
"The time of waiver is the time of disability, and that a reasonable time thereafter is allowed to make proof of such disability, and that if death occurs before the proof of disability is made, although after the due date of the premium, the insurance company is liable, where the disability arises before the due date of the premium, and continues until death."
(Italics mine.)
In this case the court was dealing with a situation where there was an ambiguity in the waiver clause and where, by reason of illness which resulted in death, the assured was prevented from furnishing proof, an entirely different situation than where the assured, as in the instant case, fails to give notice by reason of failure to read the policy, and where the waiver clause is not ambiguous. It will also be observed that the court, in that case, said that:
"A construction making the disability benefits to begin as of the time of proof might be all right where such benefits are sought while the insured is living, but a disability provision such as the one to be construed here, where the disability occurs near the due date of the premium and continues until death, is made worthless by holding the proof of disability and not the disability itself makes it operative."
It will be seen that the court, in adopting a method of construction, would apply one construction where the result would not be harsh, and an entirely different construction where a contrary result would obtain, and in Orr v. Mutual LifeInsurance Co. of New York, supra, the opinion in this case was criticised.
Complainant also cites Marti v. Midwest Life Insurance Co.,108 Neb. 845; 29 A.L.R. 1507. In this case the court was again dealing with the question of impossibility of furnishing proof by reason of insanity, and held, contrary to the weight of authority, that during insanity the insured was relieved of furnishing proof by reason of the inability, and could recover if proof were furnished within a reasonable time after the recovery. An entirely different situation than failure to give notice through one's own neglect.
Bank of Commerce and Trust Co. v. Northwestern National *Page 545 Life Insurance Co., 160 Tenn. 551; 26 S.W. Rep. 2d 135;68 A.L.R. 1380, is also cited, and the court declared the terms of the policy ambiguous. The waiver clause was different and this case is not in point by reason of the difference in the waiver clause, which the court held to be ambiguous.
I find, therefore, on this phase of the case, that the defendant was entitled to proof of disability before the waiver of premium clause became effective and that no proof of disability was offered until December 31st, 1930, at which time complainant was over sixty years of age and, therefore, not entitled to the benefit of the clause.
Complainant also asks for the return of premiums paid after September of 1922, the date of disability. This he is not entitled to under the construction given to the waiver clause, as above outlined. Such was the holding in Courson v. New YorkLife Insurance Co., supra, and to like effect is Yohalem v.Columbian National Life Insurance Co., 240 N.Y. Supp. 666;Epstein v. Mutual Life Insurance Co., 257 N.Y. Supp. 772, andFranklin Life Insurance Co. v. Fisher, supra.
I will advise a decree dismissing the bill of complaint.