## Lyford, Appellant, *v.* New England Mutual Life Insurance Co. of Boston.

Argued March 3, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*F. J. Scott,* with him *F. E. Scott,* for appellant.

*John H. Austin,* with him *Henry N. Paul,* for appellee.

OPINION BY KELLER, P. J., April 24, 1936:

On March 23, 1920, the defendant insurance company issued to plaintiff a policy of life insurance in the sum of $15,000, on which the plaintiff was to pay, during his life, an annual premium of $619.50. It was stipulated in the policy that $55.50 of this amount represented the premium charged for certain benefits secured to the insured upon his furnishing due proof of his total and permanent disability before he attained the age of sixty-five years.

On February 7, 1927, the defendant insurance company issued to plaintiff a second policy of life insurance in the sum of $10,000, on which the plaintiff was to pay, during his life, an annual premium of $466. By a supplemental agreement made the same day, it was provided, inter alia, that for an additional yearly premium of $52 the company, upon receipt of due proof of the insured's total and permanent disability prior to his sixty-fifth birthday, would make certain monthly income payments and waive the payment of premiums thereafter due. The total annual premium payable under this policy amounted to $529.

On March 21, 1934 the defendant company received due proofs at its Home Office that the insured, because

of arthritis, was totally and permanently disabled, within the provisions of the policies above referred to. Since then, beginning with March 21, 1934, it has paid the plaintiff $250 a month—$150 on policy No. 1 and $100 on policy No. 2,—and has waived all payments of premiums on both policies which have fallen due since March 21, 1934.

The plaintiff, alleging that he has been totally and permanently disabled since May 6, 1933, claimed the right to recover additional payments of monthly income as aforesaid between May 6, 1933 and March 21, 1934, when the company first received proof of his total and permanent disability; and as to policy No. 2, he also claimed the right to a refund of $529 representing the premium paid by him on February 7, 1934 when he was so disabled. He brought these actions to enforce these claims.

The cases were tried together before Judge Lewis, without a jury. His findings and conclusions were in favor of the defendant. Plaintiff's exceptions were dismissed by the court in banc and judgment was entered for the defendant in each case. Plaintiff has appealed.

The questions to be decided on this appeal are, (1) do the provisions of the policies relating to total and permanent disability require the defendant company to make monthly income payments for the period that elapsed between the date when plaintiff's total disability first began and the time when he furnished the company due proof of his total and permanent disability? and, (2) as to policy No. 2, is the company required to refund to the plaintiff a payment of premiums voluntarily made by him, at a time when he was totally and permanently disabled, but of which total and permanent disability the insurance company had no notice or knowledge? We agree with the learned court below that under the decisions of the appellate courts of this State, the answer is 'No.'

While the provisions in the two policies are not identical, for the purposes of this discussion we think they are, in practical effect, the same. Leaving out unnecessary verbiage, irrelevant to this case, the meaning is not materially different as respects the questions here involved.

Policy No. 1, thus shortened, reads: *"Waiver of Premiums and Income during Total and Permanent Disability*—If the Insured, before attaining the age of sixty-five years, ...... becomes physically or mentally incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession or to perform any work for compensation, gain or profit ...... and after such disability has existed for ninety days, shall furnish due proof thereof to the Company, at its Home Office, the Company will waive the payment of any premium thereafter due upon this policy during the continuance of such disability. Upon acceptance of such proof and during the continuance of such disability, the Company will also pay to the Insured an income of one hundred and fifty dollars a month."

Policy No. 2, thus shortened, reads: *"Income and Waiver of Premiums during Total and Permanent Disability*—Upon receiving due proof that the Insured has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain or profit, and that such disability has occurred ...... prior to the policy anniversary nearest his sixty-fifth birthday, and has existed for a period of ninety days, the Company will pay to the Insured a monthly income of one hundred dollars and will also waive the payment of every premium thereafter due" ......

Appellant's position may be briefly summarized as follows: (1) That the provisions in the policies in suit

relating to total and permanent disability are ambiguous; (2) that being ambiguous, they are to be construed most strongly in favor of the insured; (3) that a construction favorable to the insured requires that the monthly incomes be paid from the beginning of the disability rather than from the date when proof of total and permanent disability was furnished the company, and also requires the refund of premiums paid by the insured during his disability but before proof was furnished the company that it was total and permanent. If the first proposition cannot be sustained, the whole argument falls. If the clauses are not ambiguous, but are in clear accord with the contention of the company, the plaintiff must fail in these actions.

We think the clear, plain and unambiguous meaning [1] of the clauses in question is that the insurance company is under no liability to pay the insured any monthly income because of disability, or to waive any premium payments on that account, until it has received due proof of the insured's total and permanent disability, and that it has existed for ninety days, and still continues,[2] and that on receipt of such due proof it will start paying the insured a monthly income of $250 ($150 on Policy No. 1 and $100 on Policy No. 2) and will waive the payment of all premiums falling due after the receipt of such proof; that receipt of such due proof is a condition precedent to liability attaching for the payment of said monthly disability income and for the waiver of further premiums; that the word 'thereafter' as used in these clauses refers to, 'after the receipt of due proof,' and not to 'after the beginning of insured's disability'; that the words 'if' and 'upon,' as used in these clauses, introduce the condition

---

[1] See Goldman v. New York Life Ins. Co., 171 A. 541, 543 (N. J. Eq.).

[2] See Perlman v. New York Life Ins. Co., 105 Pa. Superior Ct. 413, 161 A. 752.

or conditions which must be fulfilled before liability . attaches under the policies.

Practically the same question as is here presented came before us in the very recent case of Lucas v. John Hancock Mutual Life Ins. Co., 116 Pa. Superior Ct. 298, 176 A. 514, and was decided by us adversely to the claims of this appellant. The provision of the policy in the Lucas case (see pp. 299, 300)[3] was not as clearly favorable to the company as those now under consideration, and there was no requirement in that case that the disability must have existed ninety days before due proof of it was furnished the company. The presence of such a clause makes the present cases stronger, for it is clear that with such a clause present the total disability is not to be deemed 'permanent' until it has existed for ninety days, and there are to be no payments or benefits under the policy for any disability until it is not only total but also permanent. See Perlman v. New York Life Ins. Co., 234 App. Div. 359, 254 N. Y. Supp. 648, and Corbett v. Phoenix Life Ins. Co., 259 N. Y. Supp. 221.[4]

In the Lucas case, proof of total and permanent disability was not furnished the company until October 20, 1933, more than four years after the insured alleged his total and permanent disability had begun, and he

---

[3] *"Total and Permanent Disability Benefit Provision.*

"1. If ...... the Insured shall become wholly and permanently disabled ......, the Company will upon receipt of due proof of such disability, grant the following benefits ......

"2. ...... The Company will waive the payment of further premiums, during the continuance of the disability, and will pay to the Insured, ...... a sum equal to one per centum of the face amount of the policy, ...... and a like sum monthly thereafter during the continuance of the disability ......"

[4] It is interesting to note that the plaintiff, Lyford, did not, at first, claim that he was entitled to monthly income payments during the ninety days which must elapse before the disability is presumed to be permanent. See his letter of April 3, 1934 and the plaintiff's original statements of claim.

claimed to recover monthly payments under the policy, and the refund of premiums paid by him, between August 11, 1929 and October 20, 1933, from which latter date liability under the policy was acknowledged by the company and monthly payments tendered. In deciding against this claim, Judge JAMES, speaking for the Court, said: "It appears that under these provisions due proof of the disability then existing is a condition precedent to the payment, not for the disability that has existed but for the disability then existing and which shall continue from the time that the company has due proof of the existence of the disability. The language clearly looks toward the future, and the word 'grant' [5] imports a future liability. The very purpose of the due proof clause is that prompt notice may be given, in order that the company may have an opportunity to make a fair investigation of the claim. The unfairness of plaintiff's position is best established by the present claim, in asserting a disability that had existed for more than four years prior to his filing proofs of his disability, ...... Plaintiff's right to the refund of premiums cannot be distinguished from his right to disability, prior to the receipt of due proof. The waiver of the payment of further premiums is based upon the disability, proof of which is a condition precedent. To be entitled to a waiver of premiums, he must be suffering from a disability, which is not determined until the due proof has been furnished. The waiver of premiums and the payment for disability are contained in the same clause and each is dependent upon the furnishing of due proof as provided in the first clause." He cited (p. 302) a number of cases from other jurisdictions upholding the same view. It is not necessary to repeat these citations at this time or do more than refer to them in his opinion.

---

[5] The words 'will pay' and 'will waive' likewise import future liability.

The clauses in the policy are to be read and construed in their plain, ordinary sense: Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 492; Kasarsky v. N. Y. Life Ins. Co., 260 N. Y. Supp. 769; and not by *creating* a strained 'doubt' or ambiguity and then resolving it in favor of the insured. We are not to do what Mr. Justice SIMPSON, speaking for the Supreme Court, respecting the construction of contracts of insurance, so vigorously condemned in Urian v. Scranton Life Ins. Co., 310 Pa. 144, 151, 165 A. 21, as follows: "In a number of cases elsewhere, the court created the 'doubt' by a species of argument which would not be tolerated in any other kind of contract, and then, having thus found the 'doubt' resolved it 'in favor of the insured.' So far as we are concerned, a little further reading of our opinion last referred to [Levinton v. Ohio Farmers Ins. Co., 267 Pa. 448] will disclose a rule which is paramount to the clause above quoted: Where 'language is clear and unambiguous [it] cannot be construed to mean otherwise than what it says:' Ibid. 452. We have often said this (Bole v. New Hampshire Fire Ins. Co., 159 Pa. 53; Hesse v. Traveler's Ins. Co., 299 Pa. 125; Foundation and Construction Co. v. Franklin Trust Co., 307 Pa. 10), and trust we shall continue to adhere to it, so long as our judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them."

The decision in the Lucas case, supra, only carried to their logical conclusion the rulings of our Supreme Court in Courson, Executrix, v. New York Life Ins. Co., 295 Pa. 518, 145 A. 530, and Brams v. New York Life Ins. Co., 299 Pa. 11, 148 A. 855, and of this court in Perlman v. New York Life Ins. Co., 105 Pa. Superior Ct. 413, 161 A. 752. In the Courson case, where the insured was permanently disabled by insanity, but, without giving notice of such disability and without furnishing proof thereof satisfactory to the company,

continued to pay the premiums for several years until his death, our Supreme Court held that his personal representative could not recover back from the company premiums so paid; and ruled that the giving of notice and furnishing proof of disability was not a condition subsequent, but a condition precedent to liability on the part of the company for disability benefits. And in the Brams case where the insured, because of sickness, failed to pay a premium when it fell due, or during the grace period allowed thereafter, and died after the policy had lapsed for default in payment of premiums due, it was held that there could be no recovery on the policy, notwithstanding it contained a clause waiving payment of premiums in case of total and permanent disability, because no proof of the insured's total and permanent disability had been furnished the company prior to such default.[6]

We might well stop here. But appellant's counsel have been so industrious in presenting cases from other jurisdictions and so insistent in arguing that they should rule our decision here that we feel obliged to

---

[6]As supporting these cases, see: New England Mut. Life Ins. Co. v. Reynolds, 116 So. 15 (Ala.); Hall v. Acacia Mut. Life Assn., 164 Tenn. 43, 46 S. W. (2d) 56; N. Y. Life Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 95; Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445; 145 So. 887; N. W. Mut. Life Ins. Co. v. Dean, 43 Ga. App. 67, 157 S. E. 878; Fairgrave v. Illinois Bankers Life Assn., 211 Iowa 329, 233 N. W. 714; Wick v. Western Union Life Ins. Co., 104 Wash. 129, 175 P. 953; Kearns v. Penn Mut. Life Ins. Co., 34 P. (2d) 888, 890 (Wash.); Smith v. Missouri State Life Ins. Co., 134 Kan. 426, 7 P. (2d) 65; Smith v. Mut. Life Ins. Co., 188 Ark. 1111, 69 S. W. (2d) 874, 875; Mut. Life Ins. Co. v. Smith, 79 S. W. (2d) 28, (Ky.); Franklin Life Ins. Co. v. Fisher, 164 Okla. 193, 23 P. (2d) 151; Bergholm v. Peoria Life Ins. Co., 284 U. S. 489; Goldman v. N. Y. Life Ins. Co., 171 A. 541 (N. J. Eq.); Whiteside v. North American Acc. Ins. Co., 200 N. Y. 320, 93 N. E. 948; Walters v. Jefferson Standard Life Ins. Co., 159 Tenn. 541, 20 S. W. (2d) 1038.

refer to them at some length. In most of the cases relied on by appellant the policy had lapsed or been forfeited because of the failure of the insured to pay the premiums, and after the death of the insured recovery was allowed because the insured had been prevented by insanity or other mental ailment, or by absolute physical incapacity, from giving the company notice of his total and permanent disability, which would have entitled him to a waiver of premium payments, and thus kept the policy in force until his death,[7] none of which circumstances are present in this case. And in many of them the action was not for disability benefits but for the face of the policy of life insurance.[8]

---

[7] Inter alia, Mutual Life Ins. Co. v. Johnson, 293 U. S. 335; McCoy v. N. Y. Life Ins. Co., 258 N. W. 320 (Iowa); Mutual Life Ins. Co. v. Morris, 83 S. W. (2d) 842 (Ark.); Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S. E. 192; Bank of Commerce v. N. W. Nat. Life Ins. Co., 160 Tenn. 551, 26 S. W. (2d) 135; Marti v. Midwest Life Ins. Co., 108 Neb. 845, 189 N. W. 388; Shea v. Aetna Life Ins. Co., 198 N. E. 909 (Mass.); Levan v. Metropolitan Life Ins. Co., 138 S. C. 253, 136 S. E. 304; Minnesota Mut. Life Ins. Co. v. Marshall, 29 Fed. (2d) 977. The importance of these circumstances as bearing on the decisions is seen from the following extract from the opinion in the last cited case: "A construction making the disability benefits to begin as of the time of proof might be all right where such benefits are sought while the insured is living, but a disability provision such as the one to be construed here, where the disability occurs near the due date of the premium and continues until death, is made worthless by holding the proof of disability and not the disability itself makes it operative." This method of interpretation which would apply one construction where the result would not be harsh and an entirely different construction where a contrary result would obtain was severely criticized in Goldman v. N. Y. Life Ins. Co., 171 A. 541, 545 (N. J. Eq.); see also, Orr v. Mutual Life Ins. Co., 57 Fed. (2d) 901.

[8] Inter alia, Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S. E. 192; Bank of Commerce v. Northwestern Nat. Life Ins. Co., 160 Tenn. 551, 26 S. W. (2d) 135; Marti v. Midwest Life Ins. Co., 108 Neb. 845, 189 N. W. 388; Shea v. Aetna Life Ins. Co.,

The Supreme Court of the United States in Mutual Life Ins. Co. v. Johnson, 293 U. S. 335, only followed the construction of the highest court of the state where the contract had been delivered, Virginia, (Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S. E. 192), in allowing a recovery after the death of the insured, where it was shown that he was so physically and mentally disabled as to be unable to give notice of disability before default in payment of premiums. The highest court of this State had ruled the opposite in Brams v. New York Life Ins. Co., supra. It is to be noted, however, that the opinion of the Circuit Court of Appeals for the Fourth Circuit in the Johnson case, (70 Fed. (2d) 41), which was affirmed by the Supreme Court, recognized that the furnishing of due proof to the insurance company was a *condition precedent* to the liability of the company for disability benefits, but ruled that it was necessarily excused where the insured was physically and mentally unable to give it.[9] The present case is not complicated by any circumstances such as would excuse, on the ground of necessity, the giving of due proof of total and permanent disability. The premiums were paid, the policies did not lapse, the insured is alive, and his failure to give notice of his total and permanent disability until March 21, 1934 was not due to any physical or mental weakness which could be pleaded as an excuse.

Several of the cases specially relied on by the appel-

---

198 N. E. 909 (Mass.); Levan v. Metropolitan Life Ins. Co., 138 S. C. 253, 136 S. E. 304.

[9] See also, McCoy v. N. Y. Life Ins. Co., 258 N. W. 320 (Iowa), which ruled "That a condition precedent requiring notice or proof of disability is excused where performance is impossible by reason of physical or mental incapacity of the insured, as where the insured is insane or unconscious during the period when proof should have been furnished; and that the condition may be performed within a reasonable time after the incapacity is removed."

lant [10] were concerned with group life insurance policies issued to an employer but insuring its employees while in its employment, and providing for the payment of the face of the policy in instalments if the employee became totally and permanently disabled while in such employment. The premiums were paid to the insurance company by the employer, not by the employee, although part of its cost was taken out of his wages; and the notices to the insurer were given by the employer. In these cases a construction was given the policy which would prevent the employer from cancelling the employee's insurance—and thus relieve the insurer from liability—where the employer had terminated the employment because of the employee's disability or incapacity *after* he had become totally and permanently disabled. They are in line with our own case of Turley v. John Hancock Mut. Life Ins. Co., 110 Pa. Superior Ct. 578, 168 A. 356, affirmed in 315 Pa. 245, 173 A. 163, which was cited in the Shea case (198 N. E. 909). See also Ozanich v. Metropolitan Life Ins. Co., 119 Pa. Superior Ct. 52, 180 A. 576. But they are not applicable here. The provisions of the policy in Prudential Ins. Co. v. Gray recited in the opinion of the Court of Appeals, 159 So. 262, would, in an ordinary life policy, unquestionably be held prospective rather than retrospective.

In some cases [11] the courts probably adopted a construction specially favorable to the insured because the policy contract, in case of total and permanent disability, provided for a distribution of the whole, or part,

---

[10] Shea v. Aetna Life Ins. Co., 198 N. E. 909 (Mass.); Prudential Ins. Co. v. Gray, 159 So. 262, 265, (Ala.); Prudential Ins. Co. v. Cox, 254 Ky. 98, 71 S. W. (2d) 31; Home Life Ins. Co. v. Keys, 187 Ark. 796, 797, 2 S. W. (2d) 950, 951.

[11] Storwick v. Reliance Ins. Co., 151 Wash. 153, 275 Pac. 550; Prudential Ins. Co. v. Gray, 159 So. 262, 265; Shapiro v. Metropolitan Life Ins. Co., 272 N. Y. Supp. 401; Prudential Ins. Co. v. Singletary, 151 Okla. 301, 3 Pac. (2d) 657.

of the face of the policy, instead of, as here, monthly income payments, not subtracted from the face of the policies; and the payments in those cases only anticipated what was certainly payable at death.

In Shapiro v. Metropolitan Life Ins. Co., 272 N. Y. Supp. 401, on which appellant particularly relies, the clause in question, 'Thereafter no further premiums will be required' was an entirely new sentence, and it was on this account that the court (Municipal Court of New York) held [12] that it could be applied to either of two dates referred to in the preceding clause, to wit, (1) the disability of the insured or (2) receipt by the company of proof of such disability, and adopted that one which favored the insured. There is nothing in the case which purports to overrule other cases in higher courts of that state where policies similar to the ones here involved were construed as these have been.

In Garden v. New England Mutual Life Ins. Co., 218 Iowa 1094, 254 N. W. 287, where the disability provision was identical with policy No. 2 in suit, the company contested before the jury the fact of the insured's total and permanent disability, and probably for tactical reasons, did not inject into that issue one involving four months' disability benefits. It does not conclude the defendant from taking the position it does here; any more than the plaintiff was *concluded* by his letter of April 3, 1934.

In Maze v. Equitable Life Ins. Co., 188 Minn. 139, 246 N. W. 737, the policy covered total disability, not total and *permanent* disability, and the insuring clause, just as in accident policies, related back to the disability rather than the date when proof of the disability was given the company.

---

[12] "The word 'thereafter' begins a new sentence. It is clearly separate and distinct from the previous sentence. Different minds might draw different conclusions as to which part of the preceding sentence 'thereafter' refers" (p. 402).

The great weight of authority in other jurisdictions on the issues involved in the present appeals is with the appellee. In addition to the cases cited by Judge JAMES in Lucas v. John Hancock Mutual Life Ins. Co., supra, page 302, the following are directly in point on the question here involved: Goldman v. N. Y. Life Ins. Co., 171 A. 541 (N. J. Eq.), p. 546; Kearns v. Penn Mut. Life Ins. Co., 34 Pac. (2d) 888, 892 (Wash.); Epstein v. Mutual Life Ins. Co., 257 N. Y. Supp. 772.

Counsel for appellant speak feelingly of the hardship visited on plaintiff by the construction of the policy here adopted. It is true that in these particular cases the disability of the insured from May 6, 1933 to March 21, 1934 was not denied by the company, but the ruling will apply as well to cases where total and permanent disability is contested. The clause, making the furnishing of due proof of total and permanent disability a condition precedent to liability, is a proper, reasonable and salutary one to prevent fraud and deception being practiced on the insurer. The necessity for some such provision is recognized in Courson v. N. Y. Life Ins. Co., supra, Lucas v. John Hancock Mut. Life Ins. Co., supra, and Perlman v. N. Y. Life Ins. Co., 105 Pa. Superior Ct. 413, 161 A. 752. Without it the company might be called on to pay claims four years old as in the Lucas case, or even twenty-five years old, as suggested in Wick v. Western Union Life Ins. Co., 104 Wash. 129, 175 Pac. 953, at a time when it had become impossible to test the truth and justice of the claim; although, as here, the failure to present proof of disability sooner was not due to the insured's insanity or other cause *preventing* his acting, but because of his *failure* to act, from ignorance, negligence or other cause within his own control.

But even as it is, he has not done so badly. In return for the payment of disability premiums aggregating $1,033.50 ($721.50 on policy No. 1 and $312 on policy

No. 2) he has already up to this time received cash monthly income payments totalling $6,000, and has been relieved of paying insurance premiums amounting to $2,297, and thus has received total benefits of $8,297, or more than all his premium payments to the company, after crediting yearly dividends; he will continue, without paying further premiums, to receive $3,000 a year as long as he lives, and at his death his beneficiary or estate will receive $25,000. A result such as this can scarcely be said "to place a great hardship upon the insured." In any event, the hardship was not of the defendant's making.

The assignments of error are overruled and the judgments are severally affirmed.

No. 29 February Term, 1936—Judgment affirmed.

No. 30 February Term, 1936—Judgment affirmed.