RUBE ROBINSON, complainant-appellant,

*v.*

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE U. S., defendant-respondent.

[Argued May 22d, 1939. Decided September 22d, 1939.]

*Mr. Herbert J. Kenarik,* for the appellant.

*Mr. Edward A. Markley (Mr. Patrick F. McDevitt,* on the brief), for the respondent.

The opinion of the court was delivered by

PARKER, J.

The suit is founded on a policy of "disability" insurance issued to appellant by respondent corporation. The question involved relates partly to construction of the language of the policy, and partly to facts to which that language is to be applied. The policy dates from 1931, and had been the basis of considerable litigation before the bill in this case was filed on September 2d, 1936. In 1933 there was a claim for disability indemnity which the company honored for a year or more; but finally in July, 1935, repudiated the claim and filed a bill to have the policy canceled as obtained by fraud. That suit was apparently abandoned. Counter suits were brought at law for monthly payments claimed as due, and these were settled, but in April, 1936, the company again ceased payments, and, after resort to further suits in the district court, Robinson filed the bill in this cause, praying (1) answer; (2) that the company be "compelled" to admit in any later litigation, certain facts, viz., issue of the policy; the disability provision therein; that complainant became disabled in August, 1933, which disability continued for more than four months (which under the policy raises a presump-

tion that it is permanent) ; that payments were made till April 30th, 1936, and then ceased. All this, as we understand, was fully conceded. The prayer further was (3) to compel payment of disability benefits refused, and (4) for "specific performance" of the policy agreements and an agreement of settlement of the prior litigation, made in January, 1936. The fifth prayer is substantially the same as the fourth; the sixth, for a perpetuation of testimony to the end that it be available in the future. The case shows an order to show cause based on the above prayers, and that on November 14th, 1936, it was denied. There is no specific appeal from the order of denial. Then, on December 28th, 1936, complainant presented a petition praying "that an order may be entered declaring petitioner's rights under the said contract and construing the same and ordering and decreeing that the petitioner is presumed to be totally and permanently disabled and entitled to the benefits under the said contract." This the court disposed of by an order that the application be "continued until final hearing of the cause, at which time it may then be considered." The matter proceeded to final hearing, and was decided by the vice-chancellor in a careful and well considered opinion unofficially reported in *16 N. J. Mis. R. 211; 198 Atl. Rep. 192.* There was a great deal of medical evidence, which in the opinion below is treated in detail. The company, under a "recovery" clause in the policy, demanded proof of continuing total disability as a prerequisite to further payments. Examinations and reports were made by medical men employed by each party; the company held that the disability as of the latter part of 1936 was not shown to be total and permanent according to the true intent and meaning of the policy. The vice-chancellor concluded that the position of the company was a sound one, and further concluded that while doubtless the complainant had been ill, yet he had been compensated for actual illness, and that the company was justified in refusing further payments because of want of proof of total and permanent disability; and that he was "satisfied that the complainant is not permanently disabled within the meaning of the disability clause in the policy." The decree as advised by him declares (1) that

there is a want of proof of total disability; (2) that the proof is clear and convincing that complainant is not totally disabled within the meaning of the policy, and (3) hence is not entitled to relief; and the bill is dismissed, with costs and counsel fee.

Our examination of the evidence leads to the same result as that reached by the learned vice-chancellor; and consequently we conclude that in refusing to require the company to pay, the court below was plainly right.

There are some ancillary points in the appeal, which will now be considered.

"A. The court erred in refusing to hold that the burden of going forward with the evidence was upon the defendant." (Headnote in the brief.)

The situation at the time of raising this point was as follows: at the opening of the hearing, complainant's counsel offered the policy and stated certain matters not in proof, which if proved would show that proofs of four months' continuous disability had been submitted to and accepted by the company, and thereby under the policy the disability was presumed to be permanent, subject to certain conditions. Counsel then asked the court to rule that defendant go forward with the proof. To this it was objected, and properly, that only the policy was in proof. Counsel for complainant then said: "* * * If I proceed and establish the settlement, which I think Mr. Markley will admit for the purpose of this argument, then your honor can say whether I shall go forward or Mr. Markley shall go forward. That is the ruling I should like to have." There was further colloquy, not taken down, and the court said "I think I will suggest that counsel proceed to establish the allegations in the bill * * *," and counsel proceeded to do so.

There seem to be three answers to the point:

1. The case does not show that Mr. Markley "admitted the settlement." Nothing seems to have been "admitted" except the policy.

2. Apparently the court did not rule that counsel for appellant *must* proceed. There was merely a suggestion, complied with, and this without demurrer.

3. Assuming there was a ruling, it was accepted. An exception was of course not required, as at law; but on the proposition that he advanced, counsel was either right or wrong. If right, he was entitled to rest his case and decline to go forward. That would have raised squarely an issue which defendant and the court would have to meet; but counsel apparently preferred not to raise it, and an appellate court is certainly not required to decide a moot point.

"B. The court erred in applying the doctrine of *"falsus in uno, falsus in omnibus."*

We see no error here. The maxim itself is not quoted or alluded to in the opinion. The vice-chancellor epitomized all the testimony, both of complainant and of the witnesses, at considerable length, and simply concluded, as a finder of fact, that there was such variance between the testimony of complainant in court, and his prior conduct and statements out of court, that in view of this and of the other evidence, he had failed to sustain the burden of proof. At the risk of prolixity, we think it well to quote just what the court said on this point, which meets with our entire approval.

"The complainant's attitude has not created an impression favorable to him. His credibility has been seriously impaired. His application for $25,000 additional insurance, wherein he denied that he had been suffering from physical or mental ill health, and his answers to his application for automobile licenses for the years 1934, 1935, 1936 and 1937, wherein he stated he was suffering no physical or mental ill health, all of which was at variance with his testimony in this proceeding, lead me to the conclusion that his testimony lacks sincerity and is questionable and doubtful. Where in his story of his ills and conduct, can the line between what is true and what is false, be drawn? His statements to his attending physicians were evidently accepted by them for their face value. These conclusions as to his mental condition were undoubtedly to a large extent formed from the information he furnished them. I cannot resist the inference that a large part of the information as to his alleged illness which the complainant gave to his doctors, was exaggerated, and submitted by him to them for the purpose of enlisting

their support of his claim for benefits under the policy. The testimony shows that the complainant had little, or no, objective symptoms. As above observed, every doctor of the defendant testified that the complainant was normally sound, while his own doctors declared that his condition was improved."

What has been said covers, we think, subpoint C, which relates to the weight and sufficiency of the evidence. Next we have:

"D. The court erroneously presumed that Dr. Dowd's testimony would be unfavorable to the complainant."

The language of the opinion which prompted this point is as follows:

"The solicitor for the complainant arranged for the defendant's doctors to examine the complainant in the Newark office of Dr. Ambrose F. Dowd, a neurologist. Dr. Dowd's examination was made in the presence of Drs. Beling and Denker. However, Dr. Dowd was not called by the complainant to testify. That seems significant."

Again we see no legal error. The vice-chancellor, as has been said, was acting as a finder of facts. It is every day practice in jury cases, as counsel must be fully aware, to point out to the jury the failure of the other side to call some particular witness and suggest that such failure was due to fear that the witness if called would testify unfavorably. The jury may accept the suggestion, or it may not; but the inference would be factually permissible, though not legally obligatory. As held in *Giardelli* v. *Public Service Co., 8 N. J. Mis. R. 104, 106,* cited for appellant, the judge is not required to charge that such a presumption exists, but the jury is nevertheless entitled to make the factual inference, and this is all that the vice-chancellor did.

Finally, it is urged that the court erred in refusing to comply with the supplemental petition of December 28th, 1936, for a "declaration of rights" and other incidental relief. This, as already stated, was laid over until final hearing. The application was not renewed at the final hearing. The opinion in the main case was filed April 1st, 1938, and final decree signed May 3d. About a month thereafter, the complainant gave notice for June 20th of an application for construction

of the policy and a declaration of rights pursuant to the petition of December 28th, 1936. The application was argued and a second opinion was filed in which the court held that certain parts of the proposed decree were not in accordance with the court's findings, and as regards the declaration of rights and similar matters asked to be inserted in the decree, the time to raise that issue was at the hearing and not after decree, and as it was not raised at the hearing it was considered abandoned. We concur in that view, and think the application was properly denied.

These considerations lead to an affirmance of the main decree and of the order denying the motion for June 20th, 1937.

We do not wish to be understood as approving the practice of enforcing a claim for disability based on an insurance policy, by a suit for specific performance. Both parties in the present case seem to have preferred that form of action, and we have considered the case on its merits; but the question whether specific performance in an equity suit is the proper remedy for the collection of claims by the holder of an insurance policy against the insurer, based upon the policy, is expressly reserved.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.