## BRODERICK et al. v. PRUDENTIAL INS. CO. OF AMERICA.

District Court, S. D. New York.

March 25, 1941.

Jacob S. Spiro, of New York City, for plaintiff.

Weit & Goldman, of New York City (Benjamin Paul Goldman, of New York City, of counsel), for defendant.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

Plaintiff sues on two certificates of participation of her deceased husband, Edward Broderick, in a policy of group life insurance issued by defendant in favor of certain named employees. Each certificate is in the amount of $4,000 and provides for payment not only in the event, while the insurance is in force, of the death of the insured, but also of his total and permanent disability to perform any work for any compensation during the rest of his life. Since he had left defendant's employ before his death, the case turns entirely upon the disability provision.

Edward Broderick procured the certificates on October 1, 1926, and June 1, 1928, while he was in defendant's employ selling new insurance and collecting premiums. On May 4, 1932, while so employed, he sustained a knee injury in a fall over a piece of rubber hose, and for a considerable time thereafter suffered from the injury, which was diagnosed as traumatic arthritis of the left knee. He received medical treatment for about eighteen months, and was paid workmen's compensation by defendant as self-insurer, until November 13, 1933, when he was adjudged cured. He returned to work, but shortly thereafter in the same month he left defendant's employ. He died April 13, 1936, of heart failure.

Plaintiff is suing both as beneficiary named in the certificates and as administratrix of his estate. Her action was originally begun in the Supreme Court of New York, and was removed here by defendant because the parties are citizens of different states. She claims that the knee injury worked a total and permanent disablement of the insured, so that either she or his estate is entitled to recover the face value of the insurance.

To show such disablement plaintiff herself testified that Broderick received medical attention continuously from the time of the accident until the fall of 1933, and that he continued, with her aid, to treat his knee until the time of his death; that he never again did any work, and was not able to do any for which he was fitted; and that this disability was apparent in the pain and fatigue with which he walked even a short distance, and in the discomfort he felt, even while seated, so constantly that he was unable to concentrate for any length of time on either work or diversions. Her testimony, notably as to the pain complained of and the inability to work consecutively, was substantially corroborated by that of her two grown children for at least substantial portions, though not the entire period, covered by her testimony.

This testimony, if standing alone and accepted in its entirety and with all its implications, might support a finding of total and permanent disability. Yet it is not altogether satisfactory, for the absence of any medical care in this period and the fact that everything she points out (except an asserted swelling in the knee) depended on subjective claims of pain and discomfort which may have been due less to physical affliction than to other things. Here was a man of fifty, hitherto very active, who on her testimony had ceased to do anything, who was dieting because of his weight—he was 5 feet 7, had weighed 300 pounds, but reduced to 215—and certainly a considerable degree of discomfort and unhappiness would be only natural. The fact that he, an experienced insurance man, made no claim whatsoever on these policies—or for waiver of premium on another policy which so provided on permanent disability—is a disturbing factor. Finally she had every inducement to exaggerate and showed herself far from frank in her testimony; as when she denied that he worked at all for her employment agency, and claimed her books were all destroyed, although the testimony clearly indicated that he had at least some nominal position. Very likely the truth would not have been so harmful had she been willing to disclose it.

But this testimony did not stand alone. It was opposed to practically all the other evidence and particularly the testimony of those doctors who had observed Broderick. Outside of two experts who never saw him, plaintiff's only medical testimony was that of Dr. Sprague, who treated his knee from December, 1932, until September, 1933. Dr. Sprague thought that the ultimate time of Broderick's recovery could not be foreseen even at the latter date; once, indeed, he went so far as to say that he believed the injury permanent. But he conceded that all objective symptoms showed substantial diminution during the summer of 1933; and most significantly he admitted testifying, in October, 1935, as a witness for Broderick in the action against the concern maintaining the hose which had caused the original injury, that an examination made a week earlier showed "the knee quite stable and the pain was gone" and that "it had subsided, the swelling." Moreover, he thought that Broderick would have been capable of any sedentary employment even in the summer of 1933, although not equal to the physical strain of his former job.

Taking this testimony at its strongest, it would hardly be consistent with a finding of permanent, certainly not of total, disability. Literally, the insurance certificates require that the insured "shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously, and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime." (The policy itself contains before the word "perform" the words "engage in any occupation or," which clause possibly adds clarity, though it does not change the sense.) The cases interpreting such clauses—from New Jersey, where the contract was made, as well as elsewhere—declare that the insured must be at least disabled from pursuing any gainful occupation for which he is reasonably qualified. Nickolopulos v. Equitable Life Assur. Soc., 113 N.J.L. 450, 174 A. 759; Raub v. Mutual Life Ins. Co. of New York, N.J.Err. and App., 18 A.2d 37; Williams v. John Hancock Mut. Life Ins. Co., 245 App.Div. 585, 283 N.Y.S. 87; Shabotzky v. Equitable Life Assur. Soc., 257 App.Div. 257, 12 N.Y.S.2d 848; Metropolitan Life Ins. Co. v. Foster, 5 Cir., 67 F.2d 264. But Broderick had a public school education, and had been employed as a bookseller, and then for fifteen years as manager of a health culture institute or school, before he became an insurance

broker and later insurance salesman. He must have remained qualified for non-professional, white-collar employment, and thus physically capable by the summer or fall of 1933 of any such work not requiring great exertion.

The remaining testimony appears to place this beyond doubt. Dr. Dodson examined Broderick on behalf of defendant periodically during 1932 and 1933. His reports during the summer of 1933 coincide with Dr. Sprague's in announcing substantial improvement; but in October, 1933, Dr. Dodson said that all objective symptoms had disappeared and that he believed Broderick "should be made to resume his work" as an insurance collector. Dr. Stuart, who examined Broderick in October, 1933, for the New Jersey Workmen's Compensation Bureau, agreed with Dr. Dodson that all symptoms had disappeared, and reported thereafter that his temporary disability had ceased and that there was no permanent disability. This conclusion was embodied in a decision of the Bureau rendered in January, 1934, which thus finally adjudicated and settled Broderick's right to compensation on either ground and from which no application for review was made. N.J.Rev.Stat.1937, Labor & Workmen's Comp. Law, §§ 34:15–12, 34:15–58, N.J.S.A. 34:15–12, 34:15–58. As the Bureau proceedings were between the parties to this action, that adjudication might possibly be conclusive here. Tucker v. Frank J. Beltramo, Inc., 117 N.J.L. 72, 186 A. 821, affirmed 118 N.J.L. 301, 192 A. 62; Mangani v. Hydro, Inc., 119 N.J.L. 71, 194 A. 264; J. W. Ferguson Co. v. Seaman, 119 N.J.L. 575, 197 A. 245, affirming 191 A. 739, 15 N.J.Misc. 393. But it was not so pleaded, Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; cf. Young v. Black, 7 Cranch 565, 11 U.S. 565, 3 L.Ed. 440; Southern Pacific R. Co. v. United States, 168 U.S. 1, 59, 18 S.Ct. 18, 42 L.Ed. 355; 120 A.L.R. 55, and in view of the evidence I do not find it necessary to consider this point here.

Finally, Dr. Horan testified that he took from Broderick a full medical history and made a complete examination in November, 1935, when Broderick was first afflicted with the heart trouble of which he died the following April. Broderick did not then say that he was having any trouble with his knee, and Dr. Horan noted: "Extremities.—No deformity or limitation of motion—no oedema (swelling)."

Other circumstances cumulatively support this medical testimony. Several of defendant's employees—all acquaintances of Broderick—testified that they saw him on various occasions during 1933–35, in public places or defendant's offices, walking without a limp or any apparent difficulty. Their evidence and the inference from the business card he then tendered them tend to show that Broderick was in some way active in his wife's employment agency, notwithstanding her denial. And the absence of any claim or complaint by Broderick on his visits to defendant's offices, his failure to seek disability rights on these certificates or his other policies—all point to the same conclusion. There was no total or permanent disability within the meaning of the insurance contracts.

Defendant contends strenuously that it is excused in any event because no formal proofs of disability were filed with it, as required by the policy, Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Epstein v. Mutual Life Ins. Co., 143 Misc. 587, 257 N.Y.S. 772, affirmed 236 App.Div. 843, 260 N.Y.S. 936; Goldman v. New York Life Ins. Co., 115 N.J. Eq. 535, 171 A. 541; while plaintiff asserts that defendant's knowledge of Broderick's condition gained through the medical reports and other proceedings in connection with the claim for workmen's compensation made other notice unnecessary, Barbato v. Prudential Ins. Co. of America, 165 A. 872, 11 N.J.Misc. 355; Robinson v. Equitable Life Assur. Soc., 198 A. 192, 16 N.J.Misc. 211; Id., 126 N.J.Eq. 242, 8 A.2d 600. In view of the conclusion already reached, decision on this point becomes unnecessary.

The clerk is directed to enter judgment forthwith for defendant, with costs.